UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **GORDON ALLEN WASHINGTON,** | : | |
| Debtor. | : | |
| | : | |
| | : | |
| **SPECIALIZED LOAN SERVICING** | : | |
| **LLC, and THE BANK OF NEW** | : | No. 14-cv-08063-SDW |
| **YORK MELLON, as trustee for** | : | |
| **the certificate-holders of** | : | |
| **the CWABS, Inc., asset-backed** | : | On appeal from an order of the |
| **certificates, series 2007-5,** | : | United States Bankruptcy Court |
| | : | for the District of New Jersey, |
| Appellants, | : | Case No. 14-14573 |
| | : | |
| v. | : | |
| | : | |
| **GORDON ALLEN WASHINGTON,** | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| Appellee. | : | |

**APPELLANTS' BRIEF**

**Ballard Spahr LLP**
210 Lake Drive East Suite 200
Cherry Hill, New Jersey 08002
Tel. No. 856-761-3416
Fax No. 856-761-1020

*Counsel for Appellants*

*Of Counsel and On the Brief:*

Roberto A. Rivera-Soto
Daniel JT McKenna
Christopher N. Tomlin

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................... iii

I.   PRELIMINARY STATEMENT ..................................... 1

II.  STATEMENT OF JURISDICTION AND REVIEW ...................... 2

    A.   Statement of Jurisdiction ............................ 2

    B.   Standard of Review ................................... 3

III. STATEMENT OF THE ISSUE PRESENTED ......................... 3

IV.  STATEMENT OF FACTS ....................................... 4

    A.   Debtor takes out a loan and immediately defaults ..... 4

    B.   Debtor files for bankruptcy .......................... 5

    C.   The adversary proceeding and this appeal ............. 7

V.   ARGUMENT ................................................. 10

    A.   The Bankruptcy Court erred in its interpretation
        and application for New Jersey's Fair
        Foreclosure Act ...................................... 10

        1.   Subsection (a) applies only to the
            maturity date in the loan documents ........... 13

            (a)   Subsection (a) is unambiguous:
                it only applies to a date certain
                set forth in the loan documents .......... 14

            (b)   The New Jersey Legislature knew how
                to refer to "accelerated" maturity
                dates but did not do so in
                subsection (a) .......................... 16

            (c)   The order renders subsection (c) and/or
                 foreclosure proceedings under N.J.S.A.
                2A:50-2.1 superfluous or insignificant .... 20

2.   The legislative history is clear: "maturity date" does not mean "accelerated maturity date." ................... 21

3.   Subsection (c)'s 20-year statute of limitations applies and SLS's mortgage and bankruptcy claim must be reinstated ....... 25

VI.   CONCLUSION ............................................. 27

CERTIFICATE OF SERVICE ....................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

DiProspero v. Penn,
    183 N.J. 477 (2005) ..................................... 14

Duncan v. Walker,
    533 U.S. 167, 121 S. Ct. 2120,
    150 L. Ed. 2d 251 (2001) ........................... 17, 18

Garruto v. Cannici,
    No. A-5639-09T1, 2011 WL 2409912
    (App. Div. June 6, 2011) ............................. 18

Germann v. Matriss,
    55 N.J. 193 (1970) ............................... 14 n.11

Herzog v. Twp. of Fairfield,
    349 N.J. Super. 602 (App. Div. 2002) ............. 14 n.11

In re Baker,
    300 B.R. 639 (Bankr. W.D. Pa. 2003) .................. 27

In re Kirk S. Stephan, LLC,
    No. 12-17333-GMB, 2014 WL 461180
    (D.N.J. Feb. 5, 2014),
    aff'd sub nom. In re Stephan,
    No. 14-1524, 2014 WL 6985748
    (3d Cir. Dec. 11, 2014) ............................. 26

In re Kirk S. Stephan, LLC,
    No. 13-3937 (JBS), 2014 WL 461180
    (D. N.J. Feb. 5, 2014) .............................. 27

In re Natale,
    295 F.3d 375 (3d Cir. 2002) ........................ 3 n.3

In re United Healthcare System, Inc.,
    396 F.3d 247 (3d Cir. 2005) ........................... 3

Keeley v. Loomis Fargo & Co.,
    183 F.3d 257 (3d Cir. 1999) .......................... 17

O'Connell v. State,
    171 N.J. 484 (2002) .................................. 14

Russello v. United States,
    464 U.S. 16, 104 S. Ct. 296,
    78 L. Ed. 2d 17 (1983) .................................. 17

Security Nat'l Partners Ltd. P'ship v. Mahler,
    336 N.J. Super. 101 (App. Div. 2000) ..................... 24

TRW Inc. v. Andrews,
    534 U.S. 19, 122 S. Ct. 441,
    151 L. Ed. 2d 339 (2001) .............................. 20

U.S. Bank Nat'l Ass'n v. Guillaume,
    209 N.J. 449 (2012) .................................... 13

United States v. Cooper,
    396 F.3d 308 (3d Cir. 2005) ........................... 21

United States v. Wong Kim Bo,
    472 F.2d 720 (5th Cir. 1972) .......................... 17

Walsh Trucking Co. v. Ins. Co. of N. Am.,
    838 F.2d 698 (3d Cir. 1988) ........................ 3 n.3

**Statutes, Rules and Other Authority**

United States Bankruptcy Code,
    11 U.S.C. §§ 101–1532 ............................. 2 n.2
    11 U.S.C. § 502(b)(1) ............................... 2, 8
    11 U.S.C. § 506(a)(1) .................................. 2

28 U.S.C. § 158(a)(1) ............................... 3, 3 n.3

28 U.S.C. § 158(a)(3) .................................... 3

28 U.S.C. § 2244 ....................................... 18

N.J.S.A. 1:1-1 ...................................... 13-14

New Jersey Fair Foreclosure Act,
    N.J.S.A. 2A:50-56.1(a) ............................ passim
    N.J.S.A. 2A:50-56.1(c) ................................. 1

New Jersey Uniform Commercial Code,
    N.J.S.A. 12A:3-118(a) ............................. passim

Fed. R. Bankr. P. 3002(a) .................................. 6 n.6

Fed. R. Bankr. P. 8013 ....................................... 3

Assembly Financial Institutions and
      Insurance Committee Statement on
      Senate No. 250 – L. 2009, c. 105 .......... 13, 21-22, 24-25

I.   **PRELIMINARY STATEMENT**.

This appeal presents a discrete question:  which statute of limitation applies to appellants' right to foreclose on the debtor's property?

Using a new interpretation and application of law, the Bankruptcy Court imported terms from the State's negotiable instruments statutory scheme and concluded as a matter of law, albeit reluctantly, that Fair Foreclosure Act's six-year statute of limitation, N.J.S.A. 2A:50-56.1(a) -- one of three separate limitations period in that statute -- time-barred appellants' right to foreclose.  That conclusion was in error:  the Bankruptcy Court wrongly read in new terms that do not appear anywhere in the statute's text.  By its explicit terms, N.J.S.A. 2A:50-51.6(a) applies only to the maturity date found on the face of the four corners of the loan documents.  Yet, the Bankruptcy Court incorrectly applied this limitations period to a later acceleration of the maturity date from events that occurred outside of the four corners of the loan documents; the terms of N.J.S.A. 12A:3-118(a) cannot reasonably be imported into the Fair Foreclosure Act to accelerate the maturity date of a note.

The Fair Foreclosure Act's twenty-year statute of limitations -- N.J.S.A. 2A:50-56.1(c), which does not start to run until there has been a default -- is what applies here.

Under subsection (c), appellants' right to foreclosure and proof of claim remain alive, and their mortgage on and security interest in the debtor's property is valid.

## II.   STATEMENT OF JURISDICTION AND REVIEW.

### A.   Statement of Jurisdiction.

This is an appeal from a November 20, 2014 order granting debtor/plaintiff summary judgment, disallowing defendant's secured claim pursuant to 11 U.S.C. § 502(b)(1), and avoiding lien pursuant to 11 U.S.C. § 506(a)(1) and (d), Desig. No. 17.[1], entered on November 25, 2014 by the United States Bankruptcy Court for the District of New Jersey in adversary proceeding no. 14-01319(TBA) (the "adversary proceeding") filed in the chapter 13 case (the "Bankruptcy Case") of Gordon Allen Washington ("debtor").[2]

---

[1]   References to "Desig. No. __" are to items contained in appellants' designation of the record, a copy of which has been provided to the Court.  The accompanying appendix of excerpts of record in support of appellants' brief contains the documents referenced in this brief; citations to appellants' appendix are denoted as "A[page no.], Vol. [I, II or III]."

[2]   All references to "Chapter" and "Section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, as presently in effect.  All references to "Bankr. Dkt. No. __" are to docket entries in debtor's chapter 13 bankruptcy case, Case No. 14-14573 (TBA).  All references to "Adv. Proc. No. __" are to docket entries in the adversary proceeding.

On November 26, 2014, appellants filed their <u>Rule</u> 8003 motion for leave and notice of appeal, Desig. Nos. 21, 22; the motion for leave to appeal remains pending.[3]   This Court, sitting in its bankruptcy appellate capacity, has jurisdiction over the appeal from the order under either 28 <u>U.S.C.</u> §§ 158(a)(1) or (a)(3).

B.   **Standard of review.**

A Bankruptcy Court's conclusions of law are reviewed <u>de</u> <u>novo</u>, and its findings of fact are subject to a clearly erroneous standard.   <u>Fed. R. Bankr. P.</u> 8013; <u>In re United</u> <u>Healthcare System, Inc.</u>, 396 <u>F.</u>3d 247, 249 (3d Cir. 2005).

III. **STATEMENT OF THE ISSUE PRESENTED.**

Did the Bankruptcy Court err when it (i) concluded that appellants' right to foreclose on the mortgage was time-barred, (ii) voided the mortgage on the debtor's property, (iii)

---

[3]   This brief is filed in accordance with the briefing schedule set forth in the January 5, 2015 notice of electronic filing.   As appellants' motion for leave top appeal emphasizes, the finality of bankruptcy orders are interpreted "pragmatically because these proceedings often are protracted and involve numerous parties."   <u>In re Natale</u>, 295 <u>F.</u>3d 375, 378 (3d Cir. 2002) (citation and internal quotation marks omitted).   Because the order (i) invalidates appellants' mortgage and security interest, (ii) disallows appellants' claim, and (iii) will result in the immediate sale of the real property at issue, the order is immediately appealable either as of right or at the Court's discretion.   <u>See</u> 28 <u>U.S.C.</u> § 158(a)(1), (3); <u>Walsh</u> <u>Trucking Co. v. Ins. Co. of N. Am.</u>, 838 <u>F.</u>2d 698, 701 (3d Cir. 1988); <u>In re Comer</u>, 716 <u>F.</u>2d 168, 172 (3d Cir. 1983).

disallowed appellants' claim, and (iv) concluded that debtor owns the property free and clear of the mortgage, as the result of the six-year statute of limitation of N.J.S.A. 2A:50-56.1(a) running from the date of default.

## IV.   STATEMENT OF FACTS.

### A.   Debtor takes out a loan and immediately defaults.

1.   On February 27, 2007, debtor purchased 11 Walnut Street, Madison, N.J (the "property"). Debtor paid a $130,000 deposit and took out a $520,000 30-year adjustable rate mortgage note (the "Note"). A8, Vol. I; A37, Vol. I, at ¶¶ 1-2.

2.   Debtor executed a mortgage securing repayment of the Note. A40, Vol. I.

3.   Section 3(a) of the Note expressly establishes "March 1, 2037" as the "Maturity Date" and provides that any amounts due would be paid on that day. A58, Vol. I.

4.   Section 7(C) of the Note, provides that, in the event of a "Notice of Default," the "Note Holder may require [debtor] to pay immediately the full amount of Principal which has not been paid and all interest [owed on the Note]." A59, Vol. I (emphasis supplied).

5.   Debtor defaulted on the loan within 90 days of the loan closing. A9, Vol. I. The first loan payment was due on April 1, 2007. A10, Vol. I. Debtor failed to make the

mortgage payment due on July 1, 2007, and has not made any payments after that date and for the more than seven years that have followed.  A37, Vol. I, ¶ 5.

      6.   On December 14, 2007, a foreclosure complaint was filed against debtor.  A33, Vol. I, ¶ 9.  On July 5, 2013, the foreclosure proceeding was dismissed without prejudice.  A36, Vol. I, ¶ 19.

      7.   Bank of America, N.A. and/or its successors in interest serviced the loan from its origination until November 16, 2013.  A38, Vol. I, ¶ 8.[4]

      8.   Appellant Specialized Loan Servicing LLC ("SLS")[5] became the servicer of the loan on November 16, 2013.  A38, Vol. I, ¶ 9.

      **B.**   **<u>Debtor files for bankruptcy</u>**.

      9.   On March 12, 2014, debtor filed a voluntary Chapter 7 petition, along with a motion to convert the case to Chapter 13.  A9, Vol. I.  On April 9, 2014 the case was converted to Chapter 13.  <u>Ibid.</u>

---

[4]   Bank of New York and Bank of America Corporation and its affiliates entered into a settlement agreement dated June 28, 2011.  A38, ¶ 6, Vol., I.

[5]   For ease of reference, both SLS and The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the certificate holders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-5 s/h/a The Bank of New York Mellon, as Trustee for the certificate-holders of the CWABS, Inc., ASSETBACKED CERTIFICATES, SERIES 2007-5 (the "Trust") are collectively referred to as either "SLS" or "appellants."

10.   Debtor projected the value of the property to be between $550,000 - $600,000, and scheduled SLS's debt at $519,000.  Ibid.

11.   SLS filed a proof of claim for a secured claim of $920,469.  Ibid.  The $519,000 scheduled by debtor represents only the principal due, and does not include any of the interest or penalties to which SLS contractually is entitled.  Ibid.

12.   Debtor scheduled $137,000 in general unsecured claims.  A10, Vol. I.  In addition to SLS's proof of claim, there are filed proofs of claim for:  $15,000 in priority tax claims; $70,000 in general unsecured claims (including $15,000 due to a relative); and $63,000 due on a student loan.  Ibid.[6]

13.   Each of debtor's proposed plans seeks to sell the property in a short period to pay off the other creditors. Ibid.  He proposes a pro rata distribution of the sales proceeds to the general unsecured creditors.  As the result of the order, SLS -- the estate's largest creditor -- would not receive any money from the sale of the property, while debtor stands personally to receive a windfall of hundreds of thousands of dollars.  Ibid.

---

[6]    Because the debtor's case was converted from a chapter 7 to a chapter 13 case, the total size of the res of the possible estate, excluding SLS' claim, is the value of the filed claims, or approximately $148,000.  See Fed. R. Bankr. P. 3002(a).

C.   **The adversary proceeding and this appeal**.

14.   On March 18, 2014, debtor filed the adversary proceeding against SLS.  He brought two causes of action:  (1) seeking declaration that the mortgage debt is unenforceable because (a) the Trust is allegedly not the true owner and holder of the note and mortgage; and (b) enforcement of the note and mortgage is barred by the doctrine of payment and the statute of limitations; and (2) under RESPA for damages for an alleged failure to respond to Qualified Written Requests ("QWRs"). Desig. No. 1; A61, Vol. I.

15.   Various motions for summary judgment to determine the validity, priority and extent of the mortgage lien were filed.  The three that are relevant here are:

- Debtor moved for partial summary judgment, as amended, Desig. No. 4; A65, Vol. I, based on his argument that the six-year statute of limitations of <u>N.J.S.A.</u> 12A:3-118(a)[7] for negotiable instruments has expired, so that SLS was out of time to sue on the mortgage note on which debtor defaulted on or about June 1, 2007.

- SLS cross-moved for partial summary judgment, Desig. No. 6, A205, Vol. I, because the 20-year time limit of <u>N.J.S.A.</u> 2A:50-56.1(c)[8] had not expired and SLS may foreclose on the mortgage.  SLS conceded that the 6-year statute of limitations for enforcement of the note had run, but that, under the 20-year statute of limitations applicable to proceedings against

---

[7]   For ease of reference, the full text of <u>N.J.S.A.</u> 12A:3-118(a) is reproduced at A353, Vol. I.

[8]   For ease of reference, the full text of <u>N.J.S.A.</u> 2A:50-56.1 is reproduced at A356, Vol. I.

collateral, it remained entitled to foreclose and proceed solely against the property.[9]

- Debtor cross-moved for summary judgment, Desig. No. 8, A358, Vol. II, arguing that the 6-year statute of limitation applicable to actions on a note that has been accelerated under N.J.S.A. 2A:50-56.1(a) had expired, so that SLS also was out of time to foreclose.

16.   On November 5, 2014, the Bankruptcy Court issued its memorandum decision.  It concluded that SLS's right to foreclose the mortgage was time-barred under N.J.S.A. 2A:50-56.1(a).  A6, Vol. I.  It also disallowed SLS's proof of claim under 11 U.S.C. § 502(b)(1) as unenforceable against debtor or debtor's property, reasoning that SLS was time-barred from enforcing the accelerated note and the mortgage under section 2A:50-56.1.  As a result, the Bankruptcy Court concluded that debtor owned the property free and clear of any claim of SLS. A28, Vol. I.

17.   An order on summary judgment was filed on November 17, 2014 and entered on November 18, 2014.  Desig. No. 16.  On November 19, 2014, debtor submitted a new proposed

---

[9]   This procedure also is in accord with N.J.S.A. 2A:50-2 and 2A:50-2.1, which explicitly instruct mortgagees to proceed first in foreclosure against the property and then, only if a deficiency is determined, to seek action on the note against the mortgagor within three months of the foreclosure sale; that procedure also is expressly authorized to continue despite any other lapse of time contained in the statute of limitations.

amended order.  The amended order was entered on November 20 and filed on November 25.  Desig. No. 17; A1, Vol. I.

18.  The Bankruptcy Court has not ruled on the RESPA claim remaining in the adversary proceeding.

19.  On November 24, 2014, SLS filed a motion, Desig. No. 18, seeking to stay execution of the order and confirmation of debtor's proposed chapter 13 plan (the "Plan").  Desig. No. 31.

20.  On November 26, 2014, SLS filed its timely motion for leave to appeal and notice of appeal.  Desig. Nos. 21-22; A849, Vol. III.

21.  On December 3, 2014, the Bankruptcy Court held a hearing, Desig. No. 24, and granted SLS' motion to stay, Desig. No. 26.  The Bankruptcy Court agreed that the effects of the order divesting SLS of its secured claim should be stayed pending resolution of this appeal.  However, it requested further discussion between the parties as to whether they could agree to permit the Plan to be confirmed such that a sale of the property could go forward pursuant to which any proceeds would be escrowed pending resolution of this appeal.  Desig. No. 24; A854, Vol. III.

22.  The Bankruptcy Court held a further status conference on January 15, 2015.  It issued an order from the bench extending the stay until March 12, 2015.

V.   **ARGUMENT**.

   A.   **The Bankruptcy Court erred in its interpretation and
        application of New Jersey's Fair Foreclosure Act.**

   N.J.S.A. 2A:50-56.1 sets forth the statute of

limitations to residential foreclosure actions.[10]   It provides

that "[a]n action to foreclose a residential foreclosure shall

not be commenced following the earliest of:

> a.   Six years from <u>the date fixed for the
> making of the last payment or the maturity
> date set forth in the mortgage or the note</u>,
> bond, or other obligation secured by the
> mortgage, whether the date is itself set
> forth or may be calculated from information
> contained in the mortgage or note, bond, or
> other obligation, except that if the date
> fixed for the making of the last payment or
> the maturity date has been extended by a
> written instrument, the action to foreclose
> shall not be commenced after six years from
> the extended date under terms of the written
> instrument;
>
> b.   Thirty-six years from the date of
> recording of the mortgage, or, if the
> mortgage is not recorded, 36 years from the
> date of execution, so long as the mortgage
> itself does not provide for a period of
> repayment in excess of 30 years; or
>
> c.   Twenty years from the date <u>on which the
> debtor defaulted</u>, which default has not been
> cured, as to any of the obligations or
> covenants contained in the mortgage or in
> the note, bond, or other obligation secured
> by the mortgage, except that if the date to
> perform any of the obligations or covenants

---

[10]   N.J.S.A. 2A:50-56.1 is the codification of <u>L.</u> 2009, <u>c.</u> 105,
§ 1, eff. Aug. 6, 2009, which amended the New Jersey Fair
Foreclosure Act, <u>N.J.S.A.</u> 2A:50-52, <u>et seq.</u>, which originally
was adopted in 1995.

> has been extended by a written instrument or
> payment on account has been made, the action
> to foreclose shall not be commenced after 20
> years from the date on which the default or
> payment on account thereof occurred under
> the terms of the written instrument.

[N.J.S.A. 2A:50-56.1 (emphasis supplied).]

In enacting 2A:50-56.1, the New Jersey Legislature created three distinct start dates to determine whether the statute of limitations had run on a foreclosure action. Under subsection (a), the six-year limitations period runs from the maturity date fixed in the loan documents. Under subsection (b), the 36-year limitations period runs from date of recording of the mortgage, or, if the mortgage is not recorded, from the date of execution. And, under subsection(c), the 20-year limitations period runs from the date of an uncured default or from a written extension.

The issue on this appeal is distilled to determining which limitation period applies: the six-year limitations period from the maturity date fixed in the loan documents; the 36-year limitations period from date of recording of the mortgage, or, if the mortgage is not recorded, from the date of execution; or the 20-year limitations period from the date of an uncured default or from a written extension. Appellants respectfully submit that, in the circumstances presented, because appellants' claim is not based on the maturity date of

the loan or the recording date of the mortgage, the correct answer is that 20-year limitations period from the date of an uncured default applies here.  And, because the uncured default occurred in July 2007, appellants' claim is not time-barred.

The Bankruptcy Court wrongly determined that the act of accelerating the debt due to the default -- as plainly allowed under the loan documents -- created an "accelerated maturity date," thereby triggering subsection (a) and requiring the application of the six-year statute of limitations.  A24-26, Vol. I.  By grafting the notion of an "accelerated maturity date" into the statute, the Bankruptcy Court reasoned that statute of limitations applicable to an action to foreclose on SLS's note and mortgage had run because the debt had been accelerated in 2007 and SLS did not file a proof of claim in debtor's bankruptcy until July 2014, more than seven years later.  Ibid.

The Bankruptcy Court's interpretation and conclusion are clearly in error.  The plain language of the statute makes clear that the applicable time period under subsection (a) is measured from a date certain set forth in the loan documents. The Bankruptcy Court went beyond the plain language - - of both the statute and the loan documents -- in order to read something into the statute that does not appear anywhere in its text.  It cannot be gainsaid:  nowhere does subsection (a) refer to an

"accelerated maturity date," and the Legislature did not intend for subsection (a) to reach beyond the four corners of the loan documents.  As the legislative history makes explicit, subsection (a) is intended to "provide[] that a foreclosure action must be commenced by the earliest of . . . six years <u>from the date of maturity on the mortgage</u>[.]"  Assembly Financial Institutions and Insurance Committee Statement on Senate No. 250 – L. 2009, c. 105 ("Committee Statement") (emphasis supplied). A357, Vol. I.  And, the Bankruptcy Court's reading requires going beyond the plain language of the statute and engrafting something into the text that simply is not there.  The term "accelerated maturity date" appears nowhere in subsection (a), and the Legislature did not intend otherwise.

### 1. Subsection (a) applies only to the maturity date in the loan documents.

Under established principles of statutory construction, the analysis "begins with the literal language of the statute" and, to the extent possible, "the Court must derive its construction from the Legislature's plain language." <u>U.S. Bank Nat'l Ass'n v. Guillaume</u>, 209 <u>N.J.</u> 449, 471 (2012). Indeed, the very first statute codified in New Jersey commands that "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is

expressly indicated, be given their generally accepted meaning."
N.J.S.A. 1:1-1.   "If the language chosen by the Legislature is
unambiguous, then the Court's 'interpretative process is over.'"
U.S. Bank Nat'l Ass'n, supra, 209 N.J. at 471.

It is not the function of the Court to "rewrite a
plainly-written enactment of the Legislature nor presume that
the Legislature intended something other than that expressed by
way of the plain language."  O'Connell v. State, 171 N.J. 484,
488 (2002).  "A court should not resort to extrinsic
interpretative aids when the statutory language is clear and
unambiguous, and susceptible to only one interpretation[.]"
DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation and
internal quotation marks omitted).

> **(a)   Subsection (a) is unambiguous:  it only
> applies to a date certain set forth in the
> loan documents.**

N.J.S.A. 2A:50-56.1(a) is not ambiguous:  it refers
only to a date certain that can be derived directly from a date
set forth in the mortgage or the note.  Viewing the structure of
subsection (a) through the lens of the doctrine of noscitur a
sociis[11] demonstrates that it only applies to a date certain

---

[11]     "Noscitur a sociis, 'an ancient maxim of statutory
construction,' stands for the principle 'that the meaning of
words may be indicated and controlled by those with which they
are associated.'"   Herzog v. Twp. of Fairfield, 349 N.J. Super.
602, 607 (App. Div. 2002) (quoting Germann v. Matriss, 55 N.J.
193, 220 (1970)).

found in the loan documents, and not a later acceleration date. This is why:

- The first part of subsection (a) refers to "the date _fixed_ for the making of the last payment." (emphasis supplied). This can only mean a date certain in the loan documents.

- The next part of subsection (a) refers to "the maturity date set forth _in_" the loan documents. (emphasis supplied). Subsection (a) contemplates two ways to determine the maturity date set forth "in" the loan documents, both of which are derived from a date certain contained in the documents.

  ➢ First, the maturity date "in" the loan documents can be derived directly if the "date is itself set forth." Here, section 3(a) of the Note specifically sets the maturity date as March 1, 2037; and,

  ➢ Second, the "maturity date set forth in" the operative loan document "may be calculated from information contained _in_ the mortgage or note, bond, or other obligation." (emphasis supplied). This last clause refers only to a date certain that can be calculated "in" the four corners of the loan documents.

The only reference in subsection (a) to a document outside of the loan documents is in its last clause, which details an exception to the four-corner rule when the last payment or maturity date has been extended by "a written instrument."  Although this exception does not apply here, the manner in which and the fact that the Legislature carved out this exception demonstrates the Legislature's intent that, in order for this exception to apply, there must be a later "written instrument."  The Legislature knew how to make such a distinction: it did in the statutes of limitation for negotiable instruments yet chose not to do so here.  Compare N.J.S.A. 2A:50-56.1(a) (foreclosure proceedings), with N.J.S.A. 12A:3-118(a) (negotiable instruments).

The "maturity date set forth in the mortgage or note" means exactly what the Note defines as the "Maturity Date": "March 1, 2037".  The provision of the Note for full payment on demand is Section 7, titled "Default," and it does not mention an "accelerated" maturity date.  A59, Vol. I.

**(b)  The New Jersey Legislature knew how to refer to "accelerated" maturity dates but did not do so in subsection (a).**

If the Legislature intended that an accelerated maturity date could trigger the application of subsection (a), it would have said so.  It knew how to make such a distinction:

it did so in the statutes of limitation for personal actions on negotiable instruments:

> [A]n action to enforce the obligation of a party to pay a note payable at a definitive time must be commenced within six years after the due date or dates stated in the note or, <u>if a due date is accelerated</u>, within six years after the <u>accelerated due date</u>.
>
> [<u>N.J.S.A.</u> 12A:3-118(a) (emphasis supplied).]

In stark contrast, subsection (a) contains no such carve-out for the acceleration of the maturity date in foreclosures on residential property.  The Legislature's choice not to include a reference to any event of acceleration demonstrates that it did not intend to include any such event. See <u>Russello v. United States</u>, 464 <u>U.S.</u> 16, 23, 104 <u>S. Ct.</u> 296, 78 <u>L. Ed.</u> 2d 17 (1983) ("'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting <u>United States v. Wong Kim Bo</u>, 472 <u>F.</u>2d 720, 722 (5th Cir. 1972)); <u>Duncan v. Walker</u>, 533 <u>U.S.</u> 167, 173, 121 <u>S. Ct.</u> 2120, 150 <u>L. Ed.</u> 2d 251 (2001) (same); <u>Keeley v. Loomis Fargo & Co.</u>, 183 <u>F.</u>3d 257, 265-66 (3d Cir. 1999) ("Under the well-established principle of statutory construction, <u>expressio unius est exclusio alterius</u>, the legislature's explicit expression of one thing—here, certain exceptions to the

overtime requirement—indicates its intention to exclude other exceptions from the broad coverage of the overtime requirement.").

Duncan, supra, is particularly instructive. It held that a habeas corpus petitioner could not toll the one-year statute of limitations for bringing such a petition by the filing of a first timely federal petition for habeas corpus when the applicable tolling statute applied to the filing of a "properly filed application for State post-conviction or other collateral review[.]" 28 U.S.C. § 2244. Where the statute included other references to both "State" and "Federal," the petitioner could not read "Federal" into the statute to modify "other collateral review" and toll the statute of limitations without the filing of a state petition for post-conviction or other relief. Duncan, supra, 533 U.S. at 173. Duncan emphasized that this was especially true in the statute where the words "State" and "Federal" were of "no small import" to Congress. Id. at 173-174.

N.J.S.A. 12A:3-118(a) demonstrates conclusively that the New Jersey Legislature knew how to use the term "accelerated maturity date" when it so desired to calculate the start date of a particular statute of limitation. The use of such a term of art in subsection (a) for the purposes of calculating the statute of limitation for foreclosure actions on the mortgage

would not be unknown to the Legislature or "of no small import"
in respect of a defaulted residential mortgage.  Any other
interpretation of the explicit use of "the maturity date" reads
something into the statute that is not there.[12]

The only other decision SLS has found interpreting
this statute concluded as appellants have:  that subsection (a)
is to be calculated as six years from the stated maturity date
in the mortgage documents, with subsection (c) calculated from
the date of default (including any applicable cure period); it
did so without further discussion.  Garruto v. Cannici, No. A-
5639-09T1, 2011 WL 2409912, *4 (App. Div. June 6, 2011) (per
curiam),[13] explains:

> By its terms, the maturity date of the
> mortgage was November 28, 1994 and,
> therefore, under N.J.S.A. 2A:50-56.1(a), the
> within action should have been commenced by
> November 27, 2000.  Assuming that [the
> mortgagee]'s last payment was August 10,
> 1984 (that being the date of the last
> payment uncovered in [the mortgagee]'s
> records), and she defaulted thereafter,

---

[12]   The Bankruptcy Court ignored this stark contrast in its
examination of 12A:3-118(a), instead concluding that Committee
comments to the statute indirectly instructed the borrowing of
12A:3-118(a)'s six-year statute of limitations to the running
from the accelerated maturity date for subsection (a) as well.
A23-24, Vol. I.  This not only goes against basic canons of
statutory construction, it also requires a tortured reading of
the legislative history.

[13]   Garruto is an unpublished opinion of the Appellate Division
of the Superior Court of New Jersey; for ease of reference, it
is reproduced at A868, Vol. III.

under N.J.S.A. 2A:50-56.1(c), the within action should have been commenced by September 9, 2004 (which time period includes the thirty-day cure period set forth in the mortgage).

**(c) The order renders subsection (c) and/or foreclosure proceedings under N.J.S.A. 2A:50-2.1 superfluous or insignificant.**

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (citations and internal quotation marks omitted).

The Bankruptcy Court's interpretation of subsection (a) -- one that permits the inclusion of "accelerated maturity date" into the statute's use of "maturity date" -- renders subsection (c) superfluous. In virtually all cases, the borrower's default must occur and be declared by the lender before the acceleration of the mortgage and the maturity date. If subsection (a) is allowed to refer to both six years from the maturity date and the accelerated maturity date, then subsection (c)'s twenty-year statute of limitations running from the date of default is made superfluous; it never -- never -- will be the "earlier" date by which a lender must seek foreclosure. This creates an absurd result which should not be permitted under ordinary principles of statutory construction. See United

- 20 -

States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005) (rejecting government's suggested reading of statute that conflicted with its logical interpretation).  Not only would subsection (c)'s time limitation be all but unnecessary, but N.J.S.A. 2A:50-2 would be vastly altered, if not obliterated, in its application.

> **2.   The legislative history is clear:  "maturity date" does not mean "accelerated maturity date."**

Even if one assumes, as the Bankruptcy Court did, that the term "maturity date" subsection (a) is ambiguous, the legislative history leading to its enactment supports SLS's interpretation.

As the October 8, 2008 Committee Statement makes clear:

> The bill provides that a foreclosure action must be commenced by the earliest of: (1) six years from the date of maturity on the mortgage or other obligation secured by the mortgage, matching the six-year statute of limitations on actions based on contract law; (2) 36 years from the date of recording or execution of the mortgage, provided the mortgage itself does not provide for a period of repayment in excess of 30 years, again relying upon the six-year statute of limitations for contract law; or (3) 20 years from the date of default by the debtor on the mortgage or other obligation secured by the mortgage, matching the 20-year statute of limitations on adverse possession actions. Thus, the bill allows a determination that certain mortgages are not clouds on title because a party can no longer bring an action to foreclose them beyond the bill's expressly stated statute of limitations, as borrowed from actions in

- 21 -

<u>contract law or adverse possession, as applicable.</u>

[(emphasis supplied).]

According to the Committee Statement, subsection (a) refers to commencing the foreclosure "six years <u>from the date of maturity on the mortgage</u>[.]" <u>N.J.S.A.</u> 2A:50-56.1 (emphasis supplied). A357, Vol. I. The date "on" the mortgage is a date certain on the face of the loan document. Neither subsection (a) nor the Committee Statement makes mention of a later "accelerated" maturity date or a document accelerating the maturity date.

The Bankruptcy Court looked to the immediately subsequent clause in the Committee Statement discussing subsection (a), which states that subsection (a) was meant to "match[] the six-year statute of limitations on actions based on contract law[.]" A22, Vol. I. The Bankruptcy Court erred in interpreting this reference to a "match[ing] statute of limitations" as intended to refer not only to a time period (six years) but also to a specific section of contract law, that governing actions at law on negotiable instruments that specifically includes accelerated maturity dates in its statute of limitations. <u>See</u> <u>N.J.S.A.</u> 2A:3-118(a). The Committee Statement nowhere reflects an intention to have this "six year

period" affect the definition of "maturity date."[14]   Instead, the Committee Statement makes patent that the three time periods established under subsections (a), (b) and (c) were "borrowed" from other, analogous areas of law.

Further, the Committee Statement notes that subsection (b)'s thirty-six year statute of limitations from the date of recording and/or execution is not applicable where the term of repayment is longer than 30 years; again, this is intended to "again rely[] upon the six-year statute of limitations for contract law."   Ibid. (emphasis supplied).   Any other conclusion eviscerates the difference between subsections (a) and (c) of 2A:50-56.1

Nowhere does the statute or the Committee Statement direct any reference another statute's definitions of "maturity date" to calculate these limitation periods.   Rather, they explain from where the applicable time period was borrowed:   the common law periods of contract law and adverse possession. Ibid.

Tellingly, the Committee Statement also notes that "the bill, in part, also codifies the holding of Security

---

[14]   Significantly, 2A:3-118(a) does not define maturity date to include an accelerated maturity date -- as the Bankruptcy Court did -- but rather specifically includes the "date of acceleration of the mortgage" as also triggering the six year statute of limitations for actions on a note.

National Partners Limited Partnership v. Mahler, 336 N.J. Super.
101 (App. Div. 2000), which applied a 20-year statute of
limitations to a residential mortgage foreclosure action based
on a default due to nonpayment." A357, Vol. I. Mahler
explicitly rejected the argument that it should apply a six-year
statute of limitations applicable to personal actions on a note
to in rem foreclosure actions as "contrary to long settled case
law and [without] merit." Id. at 105. And, it would be an
absurd result if the Committee Statement -- while stating that
it is explicitly adopting the 20-year time frame stated in
Mahler -- is read to adopt the six-year time frame Mahler
rejected by the expedient of including "accelerated" into the
definition of "maturity date set forth in the mortgage."

　　　　Finally, the order also creates the type of
unnecessary confusion that the Legislature sought to avoid by
enacting 2A:50-56.1. According to the Committee Statement,
"[t]his bill would resolve the uncertainties surrounding this
area of law by providing a specific statute of limitations of 20
years from the date of the default by the debtor." It further
states that one of the statute's primary purposes was to allow
"a determination that certain mortgages are not clouds on title
because a party can no longer bring an action to foreclose them
beyond the bill's expressly stated statute of limitations[.]"
Ibid. (emphasis supplied).

Subsection (a) does not state -- either expressly or impliedly -- that the statute of limitation runs from an "acceleration" of the maturity date.  Further, an acceleration does not lead to a stale mortgage creating a cloud on title, which was the reason for the limitations periods the Legislature enacted.  In enacting subsections (a) and (b), the Legislature created two alternative dates by which a statute of limitations could be clearly determined from the face of the loan documents or the public record.  If the Bankruptcy Court's order is allowed to stand, the confusion regarding the status of title will only increase by having a short statute of limitation run from an event that likely will not be in the public record.

### 3. Subsection (c)'s 20-year statute of limitations applies and SLS's mortgage and bankruptcy claim must be reinstated.

A plain reading of N.J.S.A. 2A:50-56.1 requires that subsection (a) must apply solely to the original and un-accelerated maturity date as stated in the mortgage documents.  Here, that date is set forth and defined as the "Maturity Date" in the Note and is set as March 1, 2037.  That means that, in this instance, subsection (a)'s statute of limitations has not yet started to run, much less expired.

A like result obtains under subsection (b)'s thirty-six year statute of limitations, which runs from the date of execution.  Because the loan documents were executed on February

27, 2007, the deadline to file for foreclosure is February 27, 2042, a date that, again, is in the future.

Applying subsection (c)'s 20 twenty year statute of limitations from the July 1, 2007 date of default results in a foreclosure filing deadline of July 1, 2027, a date that too has not yet come to pass.  Ironically, a fair application of 2A:50-56.1 tells us that subsection (c) -- which provides the deadline by which SLS may foreclose -- yields the earliest possible deadline to file the foreclosure action.  Because that date has not yet passed, SLS may foreclose and has a valid and secured claim in debtor's Bankruptcy Case for at least $920,469.  See In re Kirk S. Stephan, LLC, No. 12-17333-GMB, 2014 WL 461180, at *4 (D.N.J. Feb. 5, 2014), aff'd sub nom. In re Stephan, No. 14-1524, 2014 WL 6985748 (3d Cir. Dec. 11, 2014) (operation of bankruptcy stay to prevent filing of foreclosure action by second lien lender did not obviate claimant's rights under state law, and absent defense at law, such as statute of limitations, allowance of claim based on New Jersey foreclosure rights appropriate even though claimant could have foreclosed "well before" the bankruptcy filing).  A873, A878, Vol. I.

Finally, SLS' ability to proceed under its state law foreclosure rights contained in sections 2A:50-2, -2.1 and -56.1 of the Fair Foreclosure Act grant it an unsecured claim for any deficiency in the Bankruptcy Case should foreclosure not pay SLS

in full.  See In re Kirk S. Stephan, LLC, No. 13-3937 (JBS),
2014 WL 461180 at *4 (D. N.J. Feb. 5, 2014); In re Baker, 300
B.R. 639, 644 (Bankr. W.D. Pa. 2003) (portion of secured
creditor's unsecured deficiency claim can be calculated under 11
U.S.C. § 506(a) based solely on value of secured property
subtracted from total value of claim, not ability to proceed
under state law in deficiency action).

## VI.  CONCLUSION.

An accelerated maturity date cannot be read into
N.J.S.A. 2A:50-56.1(a); the proper statute of limitation in this
case is N.J.S.A. 2A:50-56.1 (c).  Under subsection (c), SLS
would have twenty years from the date of default to commence
their foreclosure.  Because debtor defaulted in 2007, SLS's
claim is timely and its secured claim in the Bankruptcy Case
must be reinstated.

For the foregoing authority, arguments and reasons,
SLS respectfully requests that the Court (i) reverse the order,
(ii) conclude that the 20-year statute of limitations in
N.J.S.A. § 2A:50-56.1(c) applies to SLS's right to foreclose on
the property as a matter of law, (iii) reinstate SLS's Claim in
the Bankruptcy Case, (iv) declare the Trust's mortgage and
security interest enforceable and valid, and (iv) grant such
other and further relief as is just and proper.

Respectfully submitted,


Roberto A. Rivera-Soto
Daniel JT McKenna
Christopher N. Tomlin
**Ballard Spahr LLP**
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08022
Tel. No. 856-761-3416
Fax No. 856-761-1020
riverasotor@ballardsphar.com
mckennad@ballardspahr.com
tomlinc@ballardspahr.com

*Attorneys for appellants*

*Specialized Loan Servicing LLC as*
*Special Servicer to the Bank of*
*New York Mellon, as Trustee for*
*the Certificate Holders of the*
*CWABS, Inc., Asset-Backed*
*Certificates, Series 2007-5*

**DATED:**      January 28, 2015

## CERTIFICATE OF SERVICE

I certify that, on the date listed below, I caused true and correct copies of the foregoing appellants' brief to be filed and served electronically via the Court's CM/ECF System.

_____
Roberto A. Rivera-Soto

**DATED:**     January 28, 2015