## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: ) | Case No.: 14-14573 |
| ) | |
| GORDON A. WASHINGTON ) | |
| ) | |
| *Debtor* ) | |
| ) | CHAPTER 13 |
| ) | |
| SPECIALIZED LOAN SERVICING, LLC ) | |
| and THE BANK of NEW YORK MELLON, ) | No. 14-cv-08063-SDW |
| as TRUSTEE for the CERTIFICATE-HOLDERS ) | |
| of the CWABS, INC., ASSET-BACKED ) | |
| CERTIFICATES, SERIES 2007-5 ) | |
| ) | |
| *Appellants* ) | |
| ) | |
| - Adv. – ) | |
| ) | |
| GORDON A. WASHINGTON ) | |
| ) | |
| *Appellee* ) | |

## APPELLEE'S BRIEF

Law Offices Charles A. Gruen
381 Broadway - Suite 300
Westwood, New Jersey 07675
Telephone: (201) 342-1212
Email: **CGruen@Gruenlaw.com**
Counsel for Appellee

Charles A. Gruen, Esq.
Rosa Amica-Terra, Esq.
*Of Counsel and On the Brief*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................ 2

ARGUMENT ..................................................................................................................... 4

THE BANKRUPTCY COURT WAS CORRECT IN ITS THOROUGH AND WELL REASONED
INTERPRETATION AND APPLICATION OF NEW JERSEY'S FAIR FORECLOSURE ACT ...... 4

  A. The Bankruptcy Court Correctly interpreted the Statute of
  Limitations ................................................................................................... 8

  B.   Appellant's Proposed Statutory Interpretation is flawed ............... 14

CONCLUSION ................................................................................................................. 18

CERTIFICATE OF SERVICE .......................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. New Jersey Power & Light Co.*, 21 N.J. 373 (1956) .. 6
*Bank v. Kim*, 361 N.J. Super. 331 (App. Div. 2003) ............. 12
*Bergen Commercial Bank v. Sisler*, 157 N.J. 188 (1999) ......... 6
*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009) ........ 5, 6
*Carnegie Bank v. Shalleck*, 256 N.J. Super. 23 (App. Div. 1992) . 9
*Cf.  U.S. v. Cheeseman*, 600 F.3d 270 (3d Cir.), *cert. den.*, ___
   U.S. ___, 131 S. Ct. 636 (2010) ............................ 8
*Cf. Kimball Intern. v. Northfield Metal*, 334 N.J. Super. 596
   (App. Div. 2000) .......................................... 12
*Chasin v. Montclair State University*, 159 N.J. 418 (1999) ... 5, 7
*Daidone v. Buterwick Bulkheading*, 191 N.J. 557 (2007) ......... 5
*D'Annunzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110 (2007) .. 5
*Garruto v. Cannici*, No. A-5639-09t1, 2011 WL 2409912 (App. Div.
   June 6, 2011) ............................................. 16
*Harrington v. Heder*, 109 N.J.Eq. 528 (E.&A. 1931) ............ 15
*In re Buchholz*, 224 B.R. 13 (Bankr.D.N.J. 1998) ............... 1
*In re Petition for Referendum on City of Trenton Ordinance 09-
   02,201 N.J. 349 (2010)* .................................... 7
*Krosnowski v. Krosnowski*, 22 N.J. 376 (1956) ................. 12
*Mannillo v. Gorski*, 54 N.J. 378 (1969) ...................... 15
*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) .............. 2
*Massachi v. City of Newark Police Dept.*, A-5252-07T1, 2010 WL
   4103696 (N.J. Super. Ct. App. Div. Aug. 4, 2010) ............ 7
*Matlack v. Burlington Cnty Bd. of Chosen Freeholders*, 194 N.J.
   Super. 359 (App. Div. 1984) ................................ 5
*Merin v. Maglaki*, 126 N.J. 430 (1992) ........................ 6
*Morris and Essex Investment Co. v. Director of Div. of Taxation*,
   33 N.J. 24 (1960) ......................................... 9
*National Waste Recycling, Inc. v. Middlesex County. Improvement
   Auth.*, 150 N.J. 209 (1997) .............................. 6,8
*Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 N.J. 251 (2008) ......... 6
*Roberts v. State, Div. of State Police*, 191 N.J. 516 (2007) .... 6
*Security National Partners Limited Partnership v. Mahler*, 336
   N.J. Super. 101 (App. Div. 2000) ....................... 8, 11
*State v. Haliski*, 140 N.J. 1 (1995) .......................... 7
*State v. Malik*, 365 N.J. Super. 267 (App. Div. 2003) ......... 7
*U.S. Bank Nat'l Ass'n v. Guillaume*, 209 N.J. 449 (2012) ...... 11
*Zimmerman v. Municipal Clerk of Tp. of Berkeley*, 201 N.J. Super
   363 (App.Div.1985) ........................................ 6

## Statutes

*N.J.S.* § 2A:50-56 ................................................. 15
*N.J.S.* § 12A:3-104 ............................................... 14
*N.J.S.* § 12A:3-118 .............................................. 3,14
*N.J.S.* § 2A:14-1 ................................................. 14
*N.J.S.* § 2A:50-39 to 45 .......................................... 15
*N.J.S.* § 2A:50-56.1(a) ........................................... 12
*N.J.S.* § 2A:50-56.1(c) ........................................... 12
*N.J.S.A* § 2A:50-56.1 ............................................. 14
*N.J.S.A.* § 1:1-1 ............................................... 5, 6
*N.J.S.A.* § 1:1-4 ................................................. 5
*N.J.S.A.* § 2A:50-39 to 45 ........................................ 16
*N.J.S.A.* § 2A:50-56 .............................................. 12
*N.J.S.A.* § 2A:50-56(a) ........................................... 11
*N.J.S.A.* § 2A:50-56.1 .......................................... 8, 15
*N.J.S.A.* § 2A:50-56.1(a) ...................................... 1, 4, 11
*N.J.S.A.* § 2A:50-56.1(c) ......................................... 16
*N.J.S.A.* § 46:17-3.1 ............................................. 1
*N.J.S.A.* § 1:1-1 ................................................. 5
*N.J.S.A.* § 2A:14-1 ............................................... 16
*N.J.S.A.* § 2A:*50-56.1* .......................................... 18

## Other Authorities

Black's Law Dictionary, 4th Ed. (1968) ......................... 13
Jacob Scott, *Codified Canons and the Common Law of
  Interpretation*, 98 *The Georgetown Law Journal* 341, 365 (fn.
  123)(2010) ...................................................... 5

## PRELIMINARY STATEMENT

This appeal involves a straightforward application of the Fair Foreclosure Act's Statute of Limitations to a residential mortgage under *N.J.S.A.* § 2A:50-56.1(a) where a lender elected the contractual remedy to accelerate the maturity date of a mortgage and neglected to file a viable action within the six-year timeframe mandated by the Act. The thorough and well-reasoned decision by the Hon. Michael B. Kaplan, U.S.B.J., which analyzed the particular statutory language in question and the statutory scheme of the Fair Foreclosure Act (FFA), extrinsic evidence such as the Legislative Intent of the FFA, and the Legislative History of the Statute of Limitations of the FFA, in addition to learned treatises, was not in pursuit of judicial activism.[1]

The Court's written opinion clearly demonstrated an aversion to the logical conclusion to which the application of the law to the facts led. Rather, Judge Kaplan adhered to the best traditions of the edict espoused by Chief Justice Marshall

---

[1]    The Bankruptcy Court conservatively declined to rule on other cogent arguments made by the Homeowner that had more sweeping consequences:  that is, (a) Defendants-Creditors lacked standing to enforce the Mortgage because of fraudulent "robo-signed" assignments that were in violation of applicable law (*In re Buchholz*, 224 *B.R.* 13 (Bankr.D.N.J. 1998)( *N.J.S.A.* § 46:17-3.1 strictly construed and proof of secured claim expunged based on a defective acknowledgement), and (b) Defendants-Creditors are attempting to collect a double payment based on proof that the Homeowner's Mortgage with America's Wholesale Lender was repurchased and paid in full pursuant to an 8.5 billion dollar settlement between Bank of America and Defendant-Creditor Bank for defective mortgages that are dismissed.  *See* Opinion at page 23, fn. 11, Plt. Brief pg. 2 (Dkt. 19-14).

that: "The Government of the United States has been emphatically termed a government of laws, and not of men." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803).

## FACTS

The salient facts upon which Judge Kaplan based his ruling are as follows:

1. The Homeowner closed the purchase of his three-family dwelling on February 27, 2007. In connection with the purchase of the Property, the Homeowner gave a down payment in the amount of $130,000.00 and signed a promissory note (hereinafter referred to as the "Promissory Note") with a lender, America's Wholesale Lender, and granted a security interest (hereinafter referred to as the "Mortgage") in the Property to America's Wholesale Lender, which according to the mortgage was a corporation organized and existing under the laws of New York.[2]

2. After closing and immediately moving into the third-floor unit, the Homeowner renovated the first and second floor apartments. On April 8, 2007, a plumbing malfunction occurred that caused water damage to the first and second floor apartments, making the apartments un-rentable. The loss of expected income resulted in the Homeowner's default in making the July 1, 2007 payment, a little more than four months after closing in February 2007.

3. Defendant-Creditor Bank's servicer accelerated the maturity date of both the Promissory Note and Mortgage to June 1, 2007;

4. Defendant-Creditor Bank accepted a transfer of the Mortgage after the July 1, 2007 default by Assignment, dated November 12, 2007, that expressly

---

[2]    This in fact was untrue since no corporation named America's Wholesale Lender existed at the time. *See* Dkt 7-22, at pg 2, footnote 3).

stated "that there is **now due and owing** upon the Mortgage and the Bond, Note or other obligation secured thereby the sum of $519,132.54 Dollars principal with interest … **from June 1, 2007**";[3]

5. Defendant-Creditor Bank filed a Foreclosure Complaint in 2007 that averred/confirmed the acceleration of the maturity date to June 1, 2007 in the Foreclosure Complaint and Motion to Strike the Homeowner's Answer;

6. The Superior Court of New Jersey Office of Foreclosure sent a Notice of Proposed Dismissal on May 31, 2013, before expiration of the six-year Statute of Limitations and only dismissed Defendant-Creditor Bank's 2007 Foreclosure Complaint after Defendant-Bank Creditor failed and neglected to correct the numerous deficiencies set forth in a Notice of Deficiencies dated November 28, 2010;

7. Defendant-Creditor Bank never appealed the dismissal of the 2007 Foreclosure Complaint and further filed a discharge of the *Lis Pendens* on August 21, 2013 stating "the matters and things in dispute have been amicably adjusted between the parties and, therefore, the said *Lis Pendens* should be discharged of record."[4]

8. Defendants-Creditors, furthermore, did not contest the fact that a future action would not relate back to the filing date of the 2007 Foreclosure Complaint; and

9. Defendant-Creditors acknowledged that the Statute of Limitations for the underlying negotiable Note/Obligation had lapsed pursuant to *N.J.S.A.* § 12A:3-118.

---

[3]     The Bankruptcy Court did not reach the issue as to whether the Bank of New York committed a fraud on the New Jersey Courts and the Morris County Clerk when it submitted an unrecorded assignment with the 2007 Foreclosure Complaint that differed from the Assignment recorded on September 9, 2009. (See Dkt 19-1, at pg 4).  The recorded Assignment was also fraudulent/defective. (See Dkt 19-1, at pg 4).

[4]     Defendant-Creditor Bank never communicated with the Homeowner, which Homeowner submits is proof the Mortgage was paid in full pursuant to the BoA Settlement Agreement that required payment in full 30 days after dismissal of a first lien foreclosure complaint. (See Dkt 7-2, at pg 7).

10.   Defendant-Creditor Bank never de-accelerated the June 1, 2007 maturity date it elected for the Note and Mortgage; Defendant-Creditor Bank and failed to de-accelerate the Mortgage maturity date pursuant to the FFA.

### ARGUMENT

### THE BANKRUPTCY COURT WAS CORRECT IN ITS THOROUGH AND WELL REASONED INTERPRETATION AND APPLICATION OF NEW JERSEY'S FAIR FORECLOSURE ACT

The question before this Court is whether Hon. Michael B. Kaplan, U.S.B.J. committed reversible error when the Court ruled that the election by Defendant-Creditor, Bank of New York Mellon, f/k/a Bank of New York, in a foreclosure action commenced in 2007, to accelerate the maturity date under both the Note and Mortgage, advanced the maturity date of the mortgage so that the Statute of Limitations set forth in *N.J.S.A.* § 2A:50-56.1(a) cut off any future cause of action by Defendants when the 2007 Foreclosure Complaint was dismissed and the Defendant-Creditor Bank discharged the *lis pendens*.  The Homeowner respectfully submits that Judge Kaplan's well-reasoned and thoroughly analyzed decision was correctly decided and should be affirmed.

In conformity with applicable New Jersey statutory and case law, a Federal Court, when called upon to interpret a New Jersey statute, must apply a "holistic approach" "to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge,*

*Inc.*, 197 *N.J.* 543, 553 (2009) (citing *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 *N.J.* 110, 119 (2007); *Daidone v. Buterwick Bulkheading,* 191 *N.J.* 557,565 (2007); *N.J.S.A.* § 1:1-1 and *N.J.S.A.* § 1:1-4; *Matlack v. Burlington Cnty Bd. of Chosen Freeholders,* 194 N.J. Super. 359, 361 (App. Div. 1984); Jacob Scott, *Codified Canons and the Common Law of Interpretation*, 98 *The Georgetown Law Journal* 341, 365 (fn. 123)(2010). *N.J.S.A.* §§ 1:1-1 to 1-4. The New Jersey Legislature in *N.J.S.* § 1:1-1 provides as follows:

**1:1-1. General rules of construction**

> In the construction of the laws and statutes of this state … words and phrases shall be read and construed with their context, and shall … unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.

The Supreme Court of New Jersey in *Chasin v. Montclair State University*, 159 N.J. 418, 427 (1999) opined that it is a well-established canon of construction that statutes are to be read *in pari materia* so that:

> '[A] legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather, a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.' [*Zimmerman v. Municipal Clerk*

*of Tp. of Berkeley,* 201 *N.J. Super* 363, 368
(App.Div.1985) (citing *Alexander v. New Jersey Power
& Light Co.,* 21 N.J. 373 (1956)).]

A Court discerns intent by first looking at the plain
language of the statute in question. *Bergen Commercial Bank v.
Sisler,* 157 N.J. 188, 202 (1999) (citing *Nat'l Waste Recycling,
Inc. v. Middlesex County Improvement Auth.,* 150 N.J. 209, 223
(1997); *Merin v. Maglaki,* 126 N.J. 430, 434 (1992)). In doing
so, Courts accord the legislatively chosen words "their
generally accepted meaning, according to the approved usage of
the language" unless another meaning "is expressly indicated."
*N.J.S.A.* § 1:1-1. If the language is clear and unambiguous, a
court should not seek further guidance. *Pizzullo v. N.J. Mfrs.
Ins. Co.,* 196 N.J. 251, 264 (2008) (citing *Roberts v. State,
Div. of State Police,* 191 N.J. 516, 521 (2007)).

When language of a statute or ordinance may have more than
one meaning or is ambiguous, the court may refer to the
extrinsic evidence to interpret intent. "If the plain
interpretation, language of a statute is not clear or if it is
susceptible to more than one possible meaning or interpretation,
[a] [c]ourt looks to extrinsic secondary sources to serve as its
guide." *Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 553
(2009). "The sources to which we look as aids in interpretation
of a statute include legislative history, statements of the
sponsor or sponsors of bills that were enacted, and, where

6

relevant, a Governor's press release or ... conditional veto message." *Massachi v. City of Newark Police Dept.*, A-5252-07TI, 2010 WL 4103696 (internal quotations omitted). "Additionally, 'whatever the rule of [statutory] construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment read in full light of its history, purpose, and context.'" *Chasin*, 159 N.J. at 426-27 (quoting *State v. Haliski*, 140 N.J. 1,9 (1995)).

A court must look at the statute as a whole, and "not analyze any one section in isolation." *Massachi v. City of Newark Police Dept.*, A-5252-07Tl, 2010 WL 4103696 *12 (N.J. Super. Ct. App. Div. Aug. 4, 2010); *see also In re Petition for Referendum on City of Trenton Ordinance* 09-02,201 *N.J.* 349, 359 (2010) ("statutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole."); *State v. Malik*, 365 N.J. Super. 267, 275-76, (App. Div. 2003) ("statute must be given generally accepted and ordinary meaning, and must be examined not only in their own contextual setting, but in relation to surrounding provisions in the statutory scheme. There is a need to keep in view ... the structure of the statute, and the relation, physical and logical, between its several parts.").

## A. The Bankruptcy Court Correctly interpreted the Statute of Limitations

The Bankruptcy Court's decision is correctly grounded on the holistic approach envisioned by the New Jersey Legislature and controlling case law. Judge Kaplan construed the whole Act in context including the Legislative intent and history, looked to the consistent usage/meaning of similar terms in other statutes, followed the ordinary usage of terms, and followed accepted/dictionary definitions of terms. *Cf. U.S. v. Cheeseman*, 600 *F.3d* 270, 285-86 (3d Cir.), *cert. den.*, ___ *U.S.* ___, 131 *S. Ct.* 636 (2010)(concurring with *National Waste Recycling, Inc. v. Middlesex County. Improvement Auth.*, 150 N.J. 209, 224 (1997)).

In 2009, the New Jersey Legislature modified New Jersey common law and amended the Fair Foreclosure Act when it enacted a Statute of Limitations that is specifically applicable to residential mortgages. In response to the holding in *Security National Partners Limited Partnership v. Mahler,* 336 N.J. Super. 101 (App. Div. 2000), which based its decision on jurisprudence borrowed from adverse possession actions, the New Jersey Legislature promulgated, as part of the Fair Foreclosure Act *N.J.S.A.* § 2A:50-56.1 ("Statute of limitations relative to foreclosure proceedings"), effective August 6, 2009.

*N.J.S.A.* § 2A:50-56.1 states:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
>
> a. *Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage, **whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation***, except that if the date fixed for the making of the last payment or the maturity date has been extended by a written instrument, the action to foreclose shall not be commenced after six years from the extended date under the terms of the written instrument;
>
> b. Thirty-six years from the date of recording of the mortgage, or, if the mortgage is not recorded, 36 years from the date of execution, so long as the mortgage itself does not provide for a period of repayment in excess of 30 years; or
>
> c. Twenty years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage, except that if the date to perform any of the obligations or covenants has been extended by a written instrument or payment on account has been made, the action to foreclose shall not be commenced after 20 years from the date on which the default or payment on account thereof occurred under the terms of the written instrument.

"A statement attached to the legislation is a useful aid in ascertaining legislative intent." *Carnegie Bank v. Shalleck*, 256 *N.J. Super.* 23, 40 (App. Div. 1992), citing *Morris and Essex Investment Co. v. Director of Div. of Taxation*, 33 N.J. 24, 33-34 (1960). As set forth in the Legislative history of the

9

amendment, the Legislature intended to cure issues caused by mortgages that have been paid or are otherwise unenforceable since these mortgages render real property titles unmarketable and delay real estate transactions. Accordingly, the Legislature intended to harmonize the Statute of Limitations with existing contract law. The Committee Statement in an October 6, 2008 report says:

> The Assembly Financial Institutions and Insurance Committee reports favorably Senate Bill 250 (1R).
>
> This bill supplements the "Fair Foreclosure Act," P.L.1995, c.244 (C.2A:50-53 et seq.) by applying a statute of limitations to residential mortgage foreclosure actions. *The bill is intended to address some of the problems caused by the presence on the record of residential mortgages which have been paid or which are otherwise unenforceable. These mortgages constitute clouds on title which may render real property titles unmarketable and delay real estate transactions.*
>
> The bill provides that a foreclosure action must be commenced by the earliest of: (1) six years from the date of maturity on the mortgage or other obligation secured by the mortgage, *matching the six-year statute of limitations on actions based on contract law*; (2) 36 years from the date of recording or execution of the mortgage, provided the mortgage itself does not provide for a period of repayment in excess of 30 years, again relying upon the six-year statute of limitations for contract law; or (3) 20 years from the date of default by the debtor on the mortgage or other obligation secured by the mortgage, matching the 20-year statute of limitations on adverse possession actions. *Thus, the bill allows a determination that certain mortgages are not clouds on title because a party can no longer bring an action to foreclose them beyond the bill's expressly stated statute of limitations, as*

> *borrowed from actions in contract law or adverse possession, as applicable.*
>
> The bill, **in part**, codifies the holding in Security National Partners Limited Partnership v. Mahler, 336 N.J. Super. 101 (App. Div. 2000) which applied a 20-year statute of limitations to a residential mortgage foreclosure action based on a default due to nonpayment. In its decision, the court noted that since there is currently no statute of limitations expressly applicable to mortgage foreclosures in these situations, courts have resorted to drawing analogies to adverse possession statutes which bar rights of entry onto land after 20 years. This bill would resolve the uncertainties surrounding this area of law by providing a specific statute of limitations of 20 years from the date of the default by the debtor. (Emphasis supplied).

A plain reading of *N.J.S.A.* § 2A:50-56.1(a) reveals that the Legislature inserted two distinct dates from which the six-year period would commence: "the date fixed for making the last payment" or "the maturity date." Given the contractual right, but not requirement, of a lender to accelerate the maturity date upon default, the "date fixed" for making the last payment and the "maturity date" are not necessarily synonymous.

A borrower may default and, unless the lender takes specific actions mandated by the FFA, "the date fixed for making the last payment" remains unchanged. The "date fixed" in a note and mortgage is static whereas, the "maturity date" can be accelerated by the lender upon a borrower's failure to perform an obligation. *See N.J.S.A.* § 2A:50-56(a); *U.S. Bank Nat'l Ass'n v. Guillaume*, 209 N.J. 449, 469-70 (2012).

As observed by Judge Kaplan, Defendant-Creditor Bank in the 2007 Foreclosure Complaint stated that the dated fixed for making the last payment is March 1, 2037.  However, Defendant-Creditor Bank made the contractual election to advance the maturity date to June 1, 2007 due to the Homeowner's default. *Cf. Kimball Intern. v. Northfield Metal*, 334 N.J. Super. 596, 606 (App. Div. 2000)(Judicial Estoppel Doctrine arises when a party asserts a position in the same or prior proceeding.  The purpose of this doctrine is to protect the integrity of the judicial system).

The Bankruptcy Court correctly observed that "acceleration" and "maturity" are not defined in the FFA.  However, Judge Kaplan opined that "courts view as axiomatic the proposition that acceleration advances the maturity of the debt" (citing *Bank v. Kim*, 361 N.J. Super. 331,344 (App. Div. 2003)(FFA, *N.J.S.A.* § 2A:50-56).  Based upon the 2007 Foreclosure Complaint filed by Defendant-Creditor Bank, there is a difference between the term "maturity date" in *N.J.S.* § 2A:50-56.1(a) and the term "default" in *N.J.S.* § 2A:50-56.1(c).  As held by the New Jersey Supreme Court, a default on an obligation will not automatically act to accelerate the entire debt unless there is an acceleration clause in both the Note and Mortgage.  *Krosnowski v. Krosnowski*, 22 *N.J.* 376, 383 (1956).  The maturity date of an obligation can be advanced at the election of a creditor in

accordance with the terms of a contract.  Black's Law
Dictionary, 4th Ed. (1968) provides:

> ACCELERATION.  The shortening of the time for the
> vesting in possession of an expectant interest….
> The word is also used in reference to contracts for
> payment of money in what is usually called an
> "acceleration clause" by which the time for the
> payment of the debt is hastened or advanced because
> of breach of some condition such as failure to pay
> interest when due.

Judge Kaplan's opinion detailed, at length, the contractual
provisions in the Note and Mortgage utilized by Defendant-
Creditor Bank when it elected the remedy to accelerate the
maturity date of the Mortgage.  Defendants-Creditors conceded
that, utilizing information contained within the four corners of
the Loan and Mortgage, the maturity date of the Mortgage was
accelerated.  Defendants-Creditors merely contended, despite
having pleaded otherwise in the 2007 Foreclosure Action, that
the acceleration date was December 14, 2007, instead of the June
1, 2007 date set forth in the Notice of Intent to Foreclose
required by the Fair Foreclosure Act.  In any event, the Court
correctly pointed out in its decision that six (6) years has
lapsed whether either date is utilized.

In its ruling, the Court justifiably looked to the
legislative intent of the Fair Foreclosure Act and the remedial
enactment of the Statute of Limitations applicable to

Residential Mortgage Foreclosures. The New Jersey Legislature "intended to address some of the problems caused by the presence on the record of residential mortgages which … are otherwise unenforceable…[that] constitute clouds on title which may render real property titles unmarketable and delay real estate transactions."

The Court further looked to the Legislative intent to harmonize the FFA's Statute of Limitations "as borrowed from actions in contract law" and examined New Jersey's Statutes of Limitations relating to regular contracts, *N.J.S.* § 2A:14-1, and negotiable instruments, *N.J.S.* § 12A:3-118. Significantly, the Note and Mortgage in question are both negotiable instruments governed by the New Jersey Uniform Commercial Code. *See N.J.S.* § 12A:3-104.

**B.    Appellant's Proposed Statutory Interpretation is flawed**

The statutory interpretation advanced by the Appellants is flawed and does not make sense in light of the entire statutory structure or the Legislative intent of the FFA. Appellants' narrow textural interpretation fails to harmonize its interpretation of *N.J.S.A.* § 2A:50-56.1 with other sections controlling foreclosure actions, and, further fails to recognize that the date fixed in an instrument for making the last payment may differ from the maturity date based on the contractual

election of a lender. Moreover, Appellants' proposed interpretation is contrary to principals of judicial economy, and would reward a lender for failing to correct deficient pleadings and sleeping on its rights. *See Harrington v. Heder*, 109 N.J.Eq. 528, 534 (E.&A. 1931)(Courts do not aid one whose indifference was the sole cause of the injury of which he complains).

There is no requirement that a mortgagee must accelerate and advance the maturity date of the entire principal and interest upon default on a promissory note and mortgage. The FFA utilizes the term "may" rather than "shall" in *N.J.S.* § 2A:50-56. As set forth in *N.J.S.* § 2A:50-39 to 45, the FFA permits a mortgagee to foreclose only to the extent of unpaid interest installments or unpaid principal and still maintain the *in rem* lien protection of the mortgage.

The Appellants' conclusion that the Bankruptcy Court's interpretation of subsection (a) of *N.J.S.A.* § 2A:50-56.1 would render subsection (c) superfluous is incorrect. If the lender does not opt to accelerate and thereby advance the maturity date of the loan, a lender may still be permitted to foreclose within twenty (20) years from the date of default. This is in accord with the concept of adverse possession which is based on inaction. See *Mannillo v. Gorski*, 54 N.J. 378 (1969)(Title by

adverse possession under *N.J.S.A.* 2A:14-1 is based on failure of party entitled to possession to act).

The Appellant Bank herein chose to accelerate the loan, thereby advancing the maturity date. It was not required to accelerate the loan in order to commence foreclosure proceedings. It could have simply chosen to foreclose the outstanding payments.

The Appellant's reliance on *Garruto v. Cannici*, No. A-5639-09t1, 2011 WL 2409912 *4 (App. Div. June 6, 2011) is misplaced. In *Garruto*, the loan was not accelerated by the lender. This key fact clearly distinguishes the facts in *Garruto* from the facts in the matter *sub judice*.

The Statute of Limitations adopted by the Legislature and incorporated into the FFA is devoid of any provision permitting a mortgagee to accelerate the maturity date of the entire mortgage and, yet, maintain the mortgage lien for 20 years under *N.J.S.A.* § 2A:50-56.1(c). *See N.J.S.A.* § 2A:50-39 to 45. Indeed, "*expression unius est exclusion alterius*".

The reference by Appellants to the interpretive canon *Noscitur a sociis* is amiss and logically inconsistent with its conduct of the 2007 Foreclosure Complaint proceedings. The Legislative History is devoid of any support for the claim by Appellants that the "maturity date … clause refers only to a date certain that can be calculated 'in' the four corners of the

loan documents. (App. Brief pg. 15)" To the contrary, the Legislative History evinces intent to allow "a determination that certain mortgages are not clouds on title … beyond the bill's expressly stated statute of limitations, as borrowed from actions in contract." The FFA clearly provides that the maturity date can be advanced at the election of the lender if such remedy is supported by the Note and Mortgage, and it adheres to the statutory requirements. Paradoxically, in the 2007 Foreclosure Complaint, Appellant referred to the "four corners" of the Note and Mortgage and successfully argued its absolute right to accelerate the maturity under both the Note and Mortgage.

## CONCLUSION

The Bankruptcy Court correctly interpreted the provisions of *N.J.S.A.* 2A:50-56.1.  The Appellants chose to accelerate the underlying debt in 2007, thereby advancing the maturity date to June 1, 2007.  Neither party took any steps to de-accelerate the maturity date.  As such, the Appellants' right to foreclose has expired.  Accordingly, it is respectfully submitted that the Appellants' alleged secured claim is unenforceable and their mortgage lien is void.

Respectfully submitted,

Charles A. Gruen
Rosa Amica-Terra
**Law Offices of Charles A. Gruen**
381 Broadway, Suite 300
Westwood, New Jersey 07675
Tel. No. 201-342-1212
Fax No. 201-342-6474
cgruen@gruenlaw.com
ramica-terra@gruenlaw.com

Attorneys for Appellee,
Gordon A. Washington

## CERTIFICATE OF SERVICE

I hereby certify that, on the date listed below, I caused true and correct copies of the foregoing Appellee's Brief to be filed and served electronically via the Court's CM/ECF System.

Rosa Amica-Terra

Dated:   February 27, 2015