# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | : |
| | : |
| **GORDON ALLEN WASHINGTON,** | : |
| Debtor. | : |
| | : |
| **SPECIALIZED LOAN SERVICING** | : |
| **LLC, and THE BANK OF NEW** | : |
| **YORK MELLON, as trustee for** | : |
| **the certificate-holders of** | : |
| **the CWABS, Inc., asset-backed** : |
| **certificates, series 2007-5,** | : |
| | : |
| Appellants, | : |
| | : |
| v. | : |
| | : |
| **GORDON ALLEN WASHINGTON,** | : |
| | : |
| Appellee. | : |
| | : |

No. 14-cv-08063-SDW

On appeal from an order of the
United States Bankruptcy Court
for the District of New Jersey,
Case No. 14-14573


**ORAL ARGUMENT REQUESTED**

## APPELLANTS' REPLY BRIEF

**Ballard Spahr LLP**
210 Lake Drive East Suite 200
Cherry Hill, New Jersey 08002
Tel. No. 856-761-3416
Fax No. 856-761-1020

Counsel for Appellants

*Of Counsel and On the Brief:*

Roberto A. Rivera-Soto
Daniel JT McKenna
Christopher N. Tomlin

# TABLE OF CONTENTS

**Page**

I.  **PRELIMINARY STATEMENT** ...................................... 1

II. **REPLY** ...................................................... 1

    A.   Debtor misconstrues the plain language
        of the FFA ............................................ 1

        1.   The FFA makes multiple references to
              "acceleration" of the mortgage, but none in
              respect of its statute of limitations .......... 5

    B.   Debtor ignores the relevant legislative history ...... 8

    C.   Appellants are not collaterally estopped from
        asserting that their claim is not time-barred ....... 11

III. **CONCLUSION** ............................................... 12

**CERTIFICATE OF FILING AND SERVICE** ........................... 14

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

Duncan v. Walker,
    533 U.S. 167 (2001) ........................................ 7

Garruto v. Cannici,
    No. A-5639-09t1, 2011 WL 2409912
    (App. Div. June 6, 2011) ............................. 8 n.6

Mullarkey v. Tamboer (In re Mullarkey),
    536 F.3d 215 (3d Cir. 2008) ........................... 11

N.J.-Phila. Presbytery of the Bible Presbyterian Church
    v. N.J. State Bd. of Higher Educ.,
    654 F.2d 868 (3d Cir. 1981) ........................... 11

Security National Partnership Ltd. v. Mahler,
    336 N.J. Super. 101 (App. Div. 2000) ................... 10

U.S. Bank Nat'l Ass'n v. Guillaume,
    209 N.J. 449 (2012) ................................. 6 n.4

### Statutes and other authorities

Iowa Code § 614-21 (2015) ................................ 4 n.2

735 Ill. Comp. Stat. 5/13-115 (2014) ..................... 4 n.2

Ky. Rev. Stat. Ann. § 413.010 (West 2015) ................ 4 n.2

Mass. Gen. Laws Ann. ch. 260, § 1 (West 2014) ............ 4 n.2

Me. Rev. Stat. tit. 14, § 6104 (2014) .................... 4 n.2

Mich. Comp. Laws § 600.3175 (2014) ....................... 4 n.2

Mont. Code Ann. § 71-1-230 (2014) ........................ 4 n.2

Neb. Rev. Stat. Ann. 25-202 (LexisNexis 2014) ........... 4 n.2

N.H. Rev. Stat. Ann. § 508.2 (2014) ...................... 4 n.2

N.J. Fair Foreclosure Act,
    N.J.S.A. 2A:50-54 ........................................ 5
    N.J.S.A. 2A:50-56 ...................................... 4-5
    N.J.S.A. 2A:50-56(a) ................................... 6 n.5
    N.J.S.A. 2A:50-56.1 ................................... passim
    N.J.S.A. 2A:50-57 ..................................... 7 n.5
    N.J.S.A. 2A:50-59 ..................................... 7 n.5

N.J.S.A. 12A:3-118(a) ........................................ 6

N.C. Gen. Stat. § 1-47 (2014) ............................. 4 n.2

Okla. Stat. tit. 12, §93 (2014) .......................... 4 n.2

Or. Rev. Stat. § 88.110 (2013) ........................... 4 n.2

42 Pa. Cons. Stat. § 5529 (2014) ......................... 4 n.2

R.I. Gen. Laws § 9-1-17 (2012) ........................... 4 n.2

S.C. Code Ann. § 29-1-10 (2014) .......................... 4 n.2

S.D. Codified Laws § 15-2-5 (2015) ....................... 4 n.2

S.D. Codified Laws § 15-2-7 (2014) ....................... 4 n.2

Tenn. Code Ann. § 28-2-111 (2014) ........................ 4 n.2

Wash. Rev. Code § 4.16.020 (2014) ........................ 4 n.2

Wyo. Stat. Ann. § 34-4-102 (2014) ........................ 4 n.2

## I.    PRELIMINARY STATEMENT.

To recap: the sole issue in dispute is what Fair Foreclosure Act ("FFA") statute of limitations applies to appellants' foreclosure claim.  To answer that question, the FFA must be interpreted according to its plain meaning within the context of the statute as a whole.  The dispute centers on the logical interpretation of the FFA's explicit statutory language and its legislative history.  Debtor provides no logical support for his interpretation of the law, resorting instead to lengthy citations and a parroting of the Bankruptcy Court's[1] flawed reading of the FFA's statute of limitations.

Any reasoned examination of the FFA's statute of limitations and its legislative history demonstrates that appellants' foreclosure claim remains timely.


## II.   REPLY.

### A.    Debtor misconstrues the plain language of the FFA.

According to debtor, subsection (a) of N.J.S.A. 2A:50-56.1 references two time periods from which the six-year statute of limitations begins to run:  (1) "the date fixed for making the last payment" on the loan or (2) "the maturity date" and, more critically, that the two terms are "not necessarily

---

[1]    To the extent not otherwise defined herein, capitalized terms shall have the meanings ascribed to them in Appellants' Opening Brief.

synonymous." (Appellee's Br. at 11.)  This tortured reading of the statutory language cannot stand.

A plain reading of N.J.S.A. 2A:50-56.1 makes clear that subsection (a)'s use of the phrase "the date fixed for the making of the last payment or the maturity date set forth in the mortgage or note" does not create two different time periods; rather, it refers to the same time period, whether explicitly referred to as the "maturity date" within the loan documents, or the loan document provides an explicit road map to calculate the date.  Subsection (a) explains that its six-year time period runs from one point in time "whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation[.]"  N.J.S.A. 2A:50-56.1(a); A356, Vol. I.  By its own terms, the statute refers to one and only one date from which the six-year time period begins to run:  the last date upon which payments are due.

The Legislature understood that, under subsection (a), there is but one date from which the six-year statute of limitations would run, whether it was called a "Maturity Date" within the loan documents or simply calculated and/or referenced as a final payment date.  The note and mortgage here are a case in point.  The note defines "Maturity Date" as "March 1, 2037," (Note, ¶ 3, A58, Vol. I), while the mortgage makes no reference to the term "maturity date" but rather states that "Borrower has

promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 01, 2037." (Mortgage, A40, Vol. I). The Maturity Date -- whether expressed or implied -- is the same in both the note and the mortgage; the note defines this date as a proper noun -- the "Maturity Date" -- and the mortgage uses the plain meaning of "maturity date" and simply states the date the final payment is due.

Further, debtor's reading of the statute requires an unfounded and unreasonable assumption: that the Legislature intended to create a difference between accelerated and non-accelerated mortgages. According to debtor's reasons, non-accelerated mortgages are subject to the twenty-year statute of limitations for defaulted mortgages under subsection (c), but defaulted mortgages that are accelerated must be foreclosed within subsection (a)'s six-year time period. (Appellee's Br. at 15). There is no rational or reasoned basis for that distinction.

Acknowledging the absurdity of his reasoning, debtor posits that his version of the FFA's statute of limitations would not render subsection (c) a nullity because a mortgagee who chose not to accelerate its debt could still avail itself of the statutory remedy for partial foreclosures under N.J.S.A. 2A:50-39 to -45 while maintaining its mortgage lien. (Appellee's Br. at 15-16). That too is illogical and unsupported

by the plain language or common practice of the home mortgage industry.[2]  Stating debtor's odd proposition aloud demonstrates its wrongness.

Under debtor's interpretation, a lender of a defaulted, non-accelerated mortgage would have twenty years to foreclose under subsection (c), but only as to partial payments of unpaid principal and interest.[3]  Within debtor's construct and without any explicit instruction in the statute, the twenty-year time frame running from "default" under subsection (c) would be cut off at the moment the lender accelerated the debt, a period the FFA itself recognizes as typically thirty days following an

---

[2]    It is commonplace that states mortgage foreclosure statutes of limitations exceed the six-year statute of limitations commonly applied to contract actions.  By way of illustration, some states, like New Jersey, have a twenty-year statute of limitations for mortgage foreclosures.  See, e.g., Mass. Gen. Laws Ann. ch. 260, § 1 (West 2014); Me. Rev. Stat. tit. 14, § 6104 (2014); Mo. Rev. Stat. § 516.150 (2012); N.H. Rev. Stat. Ann. § 508.2 (2014); 42 Pa. Cons. Stat. § 5529 (2014); R.I. Gen. Laws § 9-1-17 (2012); S.C. Code Ann. § 29-1-10 (2014).  Other states have a fifteen year statute of limitations for mortgage foreclosures.  See, e.g., Ky. Rev. Stat. Ann. § 413.010 (West 2015); Mich. Comp. Laws § 600.3175 (2014); Okla. Stat. tit. 12, §93 (2014); S.D. Codified Laws § 15-2-7 (2014).  And, some states have a ten year statute of limitations for mortgage foreclosures.  See, e.g., Iowa Code § 614-21 (2015); 735 Ill. Comp. Stat. 5/13-115 (2014); Mont. Code Ann. § 71-1-230 (2014); Neb. Rev. Stat. Ann. 25-202 (LexisNexis 2014); N.C. Gen. Stat. § 1-47 (2014); Or. Rev. Stat. § 88.110 (2013); S.D. Codified Laws § 15-2-5 (2015); Tenn. Code Ann. § 28-2-111 (2014); Wash. Rev. Code § 4.16.020 (2014); Wyo. Stat. Ann. § 34-4-102 (2014).

[3]    Presumably, such a period would run from each individual nonpayment.

uncured default.  See N.J.S.A. 2A:50-56.  Debtor's proposed statutory interpretation is all the more absurd because it would create confusion and disorder in the New Jersey home mortgage market and, ironically, incentivize lenders -- virtually all of which accelerate a mortgage in order to realize the full amount of their debt at foreclosure sale -- to bring formal foreclosure actions more quickly, a result contrary to the stated purpose of the FFA to grant borrowers "every opportunity to pay their home mortgages, and thus keep their homes."  N.J.S.A. 2A:50-54 (emphasis supplied).

> **1.  The FFA makes multiple references to "acceleration" of the mortgage, but none in respect of its statute of limitations.**

Debtor misunderstands the concept of expressio unius est exclusio alterius (the "expression of one thing is to exclude another").  (Appellee's Br. at 16).  The FFA's statute of limitations is not "devoid" of a provision relating to the lender's ability to proceed with foreclosure in the instance of acceleration.  (Ibid.).  It is this very absence of the use of the language of "acceleration" in N.J.S.A. 2A:50-56.1 -- where those terms explicitly are used elsewhere in the FFA and other statutes of limitation -- that permits the inference that its absence is intentional and that foreclosure following acceleration is permitted within twenty years under the broad concept of "default" as stated in subsection (c).

Where the Legislature actually did intend that the
statute of limitations on negotiable instruments run from the
accelerated due date of a note -- including a mortgage note --
it did so by adding an explicit contingency for acceleration.
N.J.S.A. 12A:3-118(a) (defining statute of limitations for
personal actions on note to run six years from due date on note
or "if a due date is accelerated, within six years after the
accelerated due date." (emphasis supplied)).  (A353, Vol. I.)

In stark contrast to debtor's unsupported assertions,[4]
the FFA, viewed as a whole, demonstrates the Legislature's
understanding that acceleration was a common result of the
borrower's default, but one that readily could be cured to
reinstate the borrower and halt the foreclosure process.  In
every instance in the FFA where the New Jersey Legislature saw
necessary to reference the acceleration of the note and
mortgage, it did so explicitly:  by using the plain language of
"acceleration."[5]  At a minimum, the multiple references to

---

[4]    Debtor's reference to U.S. Bank National Ass'n v.
Guillaume, 209 N.J. 449, 469-470 (2012), in respect of the
"static" nature of the "date fixed" as opposed to the ability to
accelerate the "maturity date," is unexplained.  In any event,
it does not support any theory that "the maturity date" of a
note or mortgage may be defined as a moving target.  See id. at
469-470 (discussing requirements of notice of intention to
foreclose under N.J.S.A. 2A:50-56).

[5]    See, e.g., N.J.S.A. 2A:50-56(a) (requiring lender to send
notice of intention to foreclose "before any residential
mortgage lender may accelerate the maturity of any residential

"acceleration" within the FFA to provisions related to a borrower's default and reinstatement demonstrate that it was a familiar term and concept to the Legislature within the context of foreclosures.  The Legislature's exclusion of any reference to "accelerate" or "acceleration" within N.J.S.A. 2A:50-56.1 was of "no small import" and cannot be implied into the definition of the "the maturity date" in Subsection (a).  See Duncan v. Walker, 533 U.S. 167, 173-174 (2001).

The Bankruptcy Court incorrectly concluded -- and debtor also incorrectly parrots --  that "accelerated" may be implied or read into subsection (a)'s use of the term "the maturity date" where the Legislature chose to forego the use of such language.  The many expressions of "accelerated" within both the FFA and N.J.S.A. 12A:3-118 cannot mean but one thing:

---

mortgage obligation and commence any foreclosure" (emphasis supplied)); N.J.S.A. 2A:50-57 (outlining steps borrower may take "to cure the default, de-accelerate and reinstate the residential mortgage" (emphasis supplied)), N.J.S.A. 2A:50-57(b)(2) (stating that in order to cure borrower required to perform all obligations "in the absence of the default or the exercise of an acceleration clause, if any" (emphasis supplied)), N.J.S.A. 2A:50-57(d) ("Cure of a default reinstates the debtor to the same position as if the default had not occurred.  It nullifies, as of the date of cure, any acceleration of any obligation under the mortgage, note or bond arising from the default." (emphasis supplied)); N.J.S.A. 2A:50-59 ("If a debtor is successful in curing the default under a repayment plan approved by the United States Bankruptcy Court, the residential mortgage relationship between the parties is reinstated, and the debtor is restored to the same position held before the default or acceleration" (emphasis supplied)).

its exclusion from <u>N.J.S.A.</u> 2A:50-56.1(a) was purposeful.  The only logical reading of the statute -- one that gives each subsection its proper effect -- is (a) to follow the plain meaning of "the maturity date" "set forth" in the loan documents and the broad concept of "default" manifest throughout the FFA, and (b) to calculate the relevant statutory periods as either (i) six years from the stated maturity date or (ii) twenty years from the original default, that is, the first point in time at which the lender has notice of nonpayment.[6]

**B.** **<u>Debtor ignores the relevant legislative history</u>.**

Although debtor also cites to the Committee Statement, he discusses neither it nor any other components of the FFA's legislative history.  (<u>See</u> Appellee's Br. at 10-11, 17.)  That is because one cannot scratch the surface of the relevant legislative history without revealing further support for appellants' straightforward reading of the FFA's statute of limitations.

---

[6]    Debtor's attempt to distinguish <u>Garruto v. Cannici</u>, No. A-5639-09t1, 2011 WL 2409912 at *4 (App. Div. June 6, 2011), for following this plain reading of the statute and applying subsection (c)'s 20-year statute of limitations running from the date of default is unavailing. (Appellee's Br. at 16).  Although <u>Garruto</u> does not state whether the mortgage had been accelerated, it still calculated the twenty-year period as running from the date of default <u>plus</u> the additional 30-day grace period, that is, the day after which the mortgage at issue did provide that the lender could accelerate.  <u>Id</u>. at *1, *4.

The Committee Statement explains that subsection (a) refers only to a time period "six years from <u>the date of maturity on the mortgage</u> or other obligation secured by the mortgage[.]" (Appellee's Br. at 10; A357, Vol. I. (emphasis supplied)). The sponsor's statement in support of the Senate's passage of the original bill's statute of limitations makes clear that subsections (a) and (b) of the statute of limitations were drafted for <u>title examiners</u> who, when presented only with the face of the written documents, must determine whether an action for foreclosure could still be brought. Discussing the proposed bill that then provided for a five year period running from the date of maturity and a twenty-five year period running from execution or recording, the late Senator John H. Adler emphasized that "the bill allows <u>title examiners</u> to determine that a mortgage <u>which on its face has matured more than five years ago</u> or which was recorded more than 25 years ago is not a cloud on title because an action can no longer be brought to foreclose it." Sponsor Statement of Sen. John Adler on S. 250, <u>available at</u> http://repo.njstatelib.org/bitstream/handle/ 10929.1/3306/L2009c105.pdf?sequence=1&isAllowed=y.[7]

---

[7]    For ease of reference, a true and correct copy of the legislative history to Senate Bill No. 250 -- including the original and revised texts of the bill, its Sponsor's Statement and the Senate Commerce Committee's Statement -- is attached hereto as **Exhibit "A"** and is made a part hereof by reference.

Tellingly, the Senate Commerce Committee's major change to the bill was to increase the time periods in Subsections (a) and (b) to six and thirty-six years, respectively; it did so to "borrow" the six year statute of limitations from common law "contract law." Exh. "A" at A883. Those amendments to the FFA's statute of limitations -- which increased the limitations periods -- did not change the bill's original purpose:  to prevent clouds on the chain of title by "[p]ermit[ting] the measuring of the statute of limitations from the terms of a written instrument[.]" Id. at A884.

In short, giving credence to debtor's reading of "the maturity date" to include the maturity date as accelerated would prevent a title examiner or other party from being able to determine the outside date of a foreclosure action simply by looking at the face of the documents.  Contrary to those reckless assertions, the legislative history makes patent that subsection (a) was intended to address only the maturity date on the face of the mortgage documents.

Neither debtor's brief nor the Bankruptcy Court's decision fully examines the legislative history of N.J.S.A. 50-56.1.  Had either done so, the Legislature's plainly stated three-part intent would have been revealed:  (i) under subsection (c), the holding of Security National Partnership Ltd. v. Mahler, 336 N.J. Super. 101 (App. Div. 2000) -- that

- 10 -

lenders had twenty years from the date of default to pursue mortgage foreclosure -- would be codified, (ii) uncertainty in stale title disputes would be prevented, and (iii) subsections (a) and (b) would permit that third parties determine whether any alternate claims on title might exist solely from a review of the loan documents.

### C. Appellants are not collaterally estopped from asserting that their claim is not time-barred.

Although never clearly stated, debtor seems to argue that appellants are collaterally estopped from asserting that their foreclosure claim under the statute of limitations is not time-barred. (Appellee Br. at 13, 17). That is plainly wrong.

Collateral estoppel "precludes relitigation only of questions 'distinctly put in issue' and 'directly determined' adversely to the party against which the estoppel is asserted." Mullarkey v. Tamboer (In re Mullarkey), 536 F.3d 215, 225 (3d Cir. 2008) (citing N.J.-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ., 654 F.2d 868, 876 (3d Cir. 1981) (internal citations omitted)). Because the foreclosure proceeding ultimately was dismissed without prejudice, (A15, Vol. I), there was no "direct determination" of the issue adverse to appellants. Any references by debtor to "collateral estoppel" are ill-founded, designed to distract from the true legal issue in this case: whether the FFA prohibits a

lender from filing a foreclosure action more than six years but less than twenty years following default and acceleration of a residential mortgage loan.

## III. **CONCLUSION.**

It was error for the Bankruptcy Court to fail to read the FFA as a whole, with its many references to "acceleration," and misinterpret the legislative history to graft the concept of acceleration onto N.J.S.A. 2A:50-56.1(a)'s purposeful use of the unadorned term "the maturity date." Under any relevant standard of review, this tortured reading cannot be upheld.

For the foregoing reasons, in addition to the arguments earlier raised, appellants respectfully request that the Court (i) reverse the order, (ii) conclude that the 20-year statute of limitations in N.J.S.A. 2A:50-56.1(c) applies to appellants' right to foreclose on the property as a matter of law, (iii) reinstate appellants' Claim in the Bankruptcy Case, (iv) declare the Trust's mortgage and security interest enforceable and valid, and (iv) grant such other and further relief as is just and proper.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Respectfully submitted,

Roberto A. Rivera-Soto
Daniel JT McKenna
Christopher N. Tomlin
**Ballard Spahr LLP**
210 Lake Drive East Suite 200
Cherry Hill, New Jersey 08022
Tel. No. 856-761-3416
Fax No. 856-761-1020
riverasotor@ballardsphar.com
mckennad@ballardspahr.com
tomlinc@ballardspahr.com
*Attorneys for Appellants*

*Specialized Loan Servicing LLC as
Special Servicer to the Bank of
New York Mellon, as Trustee for
the Certificate Holders of the
CWABS, Inc., Asset-Backed
Certificates, Series 2007-5*

**DATED:**      March 13, 2015

## CERTIFICATE OF SERVICE

I certify that, on the date listed below, I caused true and correct copies of the foregoing appellants' reply brief to be filed and served electronically via the Court's CM/ECF System.

Roberto A. Rivera-Soto

**DATED:**     March 13, 2015

# EXHIBIT "A"

# SENATE, No. 250

# STATE OF NEW JERSEY

## 213th LEGISLATURE

PRE-FILED FOR INTRODUCTION IN THE 2008 SESSION

Sponsored by:
**Senator JOHN H. ADLER**
**District 6 (Camden)**

**SYNOPSIS**
   Provides statute of limitations for residential mortgage foreclosures.

**CURRENT VERSION OF TEXT**
   Introduced Pending Technical Review by Legislative Counsel



**A880**

S250 ADLER

2

1    An Act concerning certain mortgage foreclosures and
2    supplementing P.L.1995, c.244 (C.2A:50-53 et seq.).

3

4    Be It Enacted *by the Senate and General Assembly of the State*
5    *of New Jersey*

6

7    1.  An action to foreclose a residential mortgage shall not be
8    commenced following the earliest of:
9    a.  Five years from the date fixed for the making of the last
10   payment or the maturity date set forth in the mortgage or the note,
11   bond, or other obligation executed contemporaneously with the
12   mortgage, whether the date is itself set forth or may be calculated
13   from information contained in the mortgage or note, bond, or other
14   obligation, except that if the date fixed for the making of the last
15   payment or the maturity date has been extended by a recorded
16   instrument, the action to foreclose shall not be commenced after
17   five years from the extended date under the terms of the recorded
18   instrument;
19   b.  Twenty-five years from the date of recording of the mortgage,
20   or, if the mortgage is not recorded, 25 years from the date of
21   execution, so long as the mortgage itself does not provide for a
22   period of repayment in excess of 20 years; or
23   c.  Twenty years from the date on which the debtor defaulted,
24   which default has not been cured, as to any of the obligations or
25   covenants contained in the mortgage or in the note, bond, or other
26   obligation executed contemporaneously with the mortgage, except
27   that if the date to perform any of the obligations or covenants has
28   been extended by a recorded instrument, the action to foreclose
29   shall not be commenced after 20 years from the date on which the
30   default occurred under the terms of the recorded instrument.

31

32   2.  This act shall take effect immediately.

33

34

35   Sponsor's   STATEMENT

36

37   This bill supplements the "Fair Foreclosure Act," P.L.1995,
38   c.244 (C.2A:50-53 et seq.) by applying a statute of limitations to
39   residential mortgage foreclosure actions. The bill is intended to
40   address some of the problems caused by the presence on the record
41   of residential mortgages which have been paid or which are
42   otherwise unenforceable. These mortgages constitute clouds on title
43   which may render real property titles unmarketable and delay real
44   estate transactions.
45   The bill provides that a foreclosure action must be commenced
46   by the earliest of: (1) five years from the date of maturity; (2) 25
47   years from the date of recording or execution, provided that the

S250 ADLER

3

1   mortgage itself does not provide for a period of repayment in excess
2   of 20 years; or (3) 20 years from the date of default by the debtor.
3   Thus, the bill allows title examiners to determine that a mortgage
4   which on its face has matured more than five years ago or which
5   was recorded more than 25 years ago is not a cloud on title because
6   an action can no longer be brought to foreclose it.
7      The bill also codifies the holding in Security National Partners
8   Limited Partnership v. Mahler, 336 N.J. Super. 101 (App. Div.
9   2000), which applied a 20-year statute of limitations to a residential
10  mortgage foreclosure action based on a default due to nonpayment.
11  In its decision, the court noted that since there is no statute of
12  limitations expressly applicable to mortgage foreclosures in these
13  situations, courts have resorted to drawing analogies to adverse
14  possession statutes which bar rights of entry onto land after 20
15  years. This bill would resolve the uncertainties surrounding this
16  area of law by providing a specific statute of limitations of 20 years
17  from the date of the default by the debtor.

A882

# SENATE COMMERCE COMMITTEE

## STATEMENT TO

## SENATE, No. 250

with committee amendments

# STATE OF NEW JERSEY

### DATED: MAY 8, 2008

The Senate Commerce Committee reports favorably and with committee amendments Senate Bill No. 250.

This bill, as amended, supplements the "Fair Foreclosure Act," P.L.1995, c.244 (C.2A:50-53 et seq.), by applying a statute of limitations to residential mortgage foreclosure actions. The bill is intended to address some of the problems caused by the presence on the record of residential mortgages which have been paid or which are otherwise unenforceable. These mortgages constitute clouds on title which may render real property titles unmarketable and delay real estate transactions.

The bill provides that a foreclosure action must be commenced by the earliest of: (1) six years from the date of maturity on the mortgage or other obligation secured by the mortgage, matching the six-year statute of limitations on actions based on contract law; (2) 36 years from the date of recording or execution of the mortgage, provided the mortgage itself does not provide for a period of repayment in excess of 30 years, again relying upon the six-year statute of limitations for contract law; or (3) 20 years from the date of default by the debtor on the mortgage or other obligation secured by the mortgage, matching the 20-year statute of limitations on adverse possession actions. Thus, the bill allows a determination that certain mortgages are not clouds on title because a party can no longer bring an action to foreclose them beyond the bill's expressly stated statute of limitations, as borrowed from actions in contract law or adverse possession, as applicable.

The bill, in part, codifies the holding in Security National Partners Limited Partnership v. Mahler, 336 N.J. Super. 101 (App. Div. 2000), which applied a 20-year statute of limitations to a residential mortgage foreclosure action based on a default due to nonpayment. In its decision, the court noted that since there is currently no statute of limitations expressly applicable to mortgage foreclosures in these situations, courts have resorted to drawing analogies to adverse possession statutes which bar rights of entry onto land after 20 years. This bill would resolve the uncertainties surrounding this area of law by providing a specific statute of limitations of 20 years from the date of the default by the debtor.

A883

2

The committee amendments to the bill:

- Provide that a residential mortgage foreclosure shall commence by the earliest of three events: 1) six years from the date of maturity of the mortgage or other obligation secured by the mortgage (up from five years); 2) 36 years from the date of recording or execution of the mortgage (up from 25 years); or 3) 20 years from the date of default by the debtor on the mortgage or other obligation secured by the mortgage; and

- Permit the measuring of the statute of limitations from the terms of a written instrument, whether or not recorded.

This bill was pre-filed for introduction in the 2008-2009 session pending technical review.  As reported, the bill includes the changes required by technical review, which has been performed.

[First Reprint]

## SENATE, No. 250

# STATE OF NEW JERSEY

## 213th LEGISLATURE

PRE-FILED FOR INTRODUCTION IN THE 2008 SESSION

**Sponsored by:**
**Senator JOHN H. ADLER**
**District 6 (Camden)**
**Assemblyman JOHN S. WISNIEWSKI**
**District 19 (Middlesex)**
**Assemblyman GARY S. SCHAER**
**District 36 (Bergen, Essex and Passaic)**
**Assemblywoman L. GRACE SPENCER**
**District 29 (Essex and Union)**

**Co-Sponsored by:**
**Assemblywoman Greenstein and Assemblyman Diegnan**

**SYNOPSIS**
    Provides statute of limitations for residential mortgage foreclosures.

**CURRENT VERSION OF TEXT**
    As reported by the Senate Commerce Committee on May 8, 2008, with amendments.



(Sponsorship Updated As Of: 5/22/2009)

A885

S250 [1R] ADLER

2

1    AN ACT concerning certain mortgage foreclosures and
2    supplementing P.L.1995, c.244 (C.2A:50-53 et seq.).
3
4    BE IT ENACTED by the Senate and General Assembly of the State
5    of New Jersey :
6
7    1. An action to foreclose a residential mortgage shall not be
8    commenced following the earliest of:
9    a. ¹[Five] Six¹ years from the date fixed for the making of the
10   last payment or the maturity date set forth in the mortgage or the
11   note, bond, or other obligation ¹[executed contemporaneously
12   with] secured by¹ the mortgage, whether the date is itself set forth
13   or may be calculated from information contained in the mortgage or
14   note, bond, or other obligation, except that if the date fixed for the
15   making of the last payment or the maturity date has been extended
16   by a ¹[recorded] written¹ instrument, the action to foreclose shall
17   not be commenced after ¹[five] six¹ years from the extended date
18   under the terms of the ¹[recorded] written¹ instrument;
19   b. ¹[Twenty-five] Thirty-six¹ years from the date of recording of
20   the mortgage, or, if the mortgage is not recorded, ¹[25] 36¹ years
21   from the date of execution, so long as the mortgage itself does not
22   provide for a period of repayment in excess of ¹[20] 30¹ years; or
23   c. Twenty years from the date on which the debtor defaulted,
24   which default has not been cured, as to any of the obligations or
25   covenants contained in the mortgage or in the note, bond, or other
26   obligation ¹[executed contemporaneously with] secured by¹ the
27   mortgage, except that if the date to perform any of the obligations
28   or covenants has been extended by a ¹[recorded] written¹
29   instrument ¹or payment on account has been made¹, the action to
30   foreclose shall not be commenced after 20 years from the date on
31   which the default ¹or payment on account thereof¹ occurred under
32   the terms of the ¹[recorded] written¹ instrument.
33
34   2. This act shall take effect immediately.

EXPLANATION – Matter enclosed in bold-faced brackets [thus] in the above bill is
not enacted and is intended to be omitted in the law.

Matter underlined thus is new matter.
Matter enclosed in superscript numerals has been adopted as follows:
¹Senate SCM committee amendments adopted May 8, 2008.