```
 1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF NEW JERSEY
 2                      CIVIL ACTION 2:14-CV-8063-SDW

 3      SPECIALIZED LOAN SERVICING, : TRANSCRIPT OF PROCEEDINGS
        LLC,                        :
 4                    Appellee      :        M O T I O N
                                    :
 5                   -vs-           :
                                    :
 6      GORDON ALLEN WASHINGTON,    :          Pages 1 - 19
                     Appellants     :
 7      - - - - - - - - - - - - - - -

 8                                       Newark, New Jersey
                                         June 18, 2015
 9
        B E F O R E:   HONORABLE SUSAN D. WIGENTON,
10                       UNITED STATES DISTRICT JUDGE

11
        A P P E A R A N C E S:
12
             CHARLES A. GRUEN
13           BY:  ROSA AMICA-TERRA, ESQ.
                  -and-
14           WALTER D'NEALY, ESQ.
             Attorneys for the Appellee
15
             BALLARD SPAHR
16           BY:  ROBERTO A. RIVERA-SOTO
             CHRISTOPHER TOMLIN, ESQ.
17           Attorneys for the Defendant

18
        _____
19      Pursuant to Section 753 Title 28 United States Code, the
        following transcript is certified to be an accurate record as
20      taken stenographically in the above entitled proceedings.

21
                              S/Carmen Liloia
22                            CARMEN LILOIA
                              Certified Court Reporter
23                            973-477-9704

24

25
```

1              THE COURT:  All right.  This is the matter of
2    Washington versus Specialized Loans Servicing, LLC.  It's civil
3    action 14-8063.
4              Counsel, you may enter your appearances, please.
5              MS. AMICA-TERRA:  Good morning, your Honor.  Rosa
6    Amica-Terra, from the law offices of Charles Gruen, on behalf
7    of Gordon Allen Washington.
8              THE COURT:  Okay, good morning.
9              MR. NEALY:  Water D. Nealy of the offices of
10   Walter D. Nealy, PC on behalf of Allen Washington.  I
11   represented him as a debtor in the bankruptcy court.
12             THE COURT:  Counsel, spell your name for me.  I
13   don't see it on this lovely sign-in sheet, so I just want to
14   that we have you.
15             MR. NEALY:  N-E-A-L-Y.
16             THE COURT:  M-E?
17             MR. NEALY:  No, N as and in Nancy, E-A-L-Y.
18             THE COURT:  Gotcha, very well.
19             MR. RIVERA-SOTO:  Good morning, your Honor.
20             THE COURT:  Good morning.
21             MR. RIVERA-SOTO:  Roberto Rivera-Soto and
22   Christopher Tomlin of Ballard Spahr, and we appear on behalf of
23   both SLS and Bank of New York Mellon.
24             THE COURT:  Very well.  It's good to have all of
25   you.  Everyone, you can have a seat for a second.

1           This is a request for appellate review as it
2    relates to a bankruptcy decision that was issued by Judge
3    Kaplan in this matter, that opinion having been -- resulted
4    from, I should say, a hearing that took place on September
5    30th, 2014.  And I believe that this opinion was entered on
6    November 5th, 2014, or somewhere certainly thereabouts
7           So with that being said, I have read all the
8    submissions that have been provided to the Court.  I did not
9    bring out the numerous submissions with me now, but I did want
10   to give counsel an opportunity to be heard orally, which is why
11   we scheduled today's hearing.
12          So former Justice Roberto Rivera-Soto, if you wish
13   to be heard, I'll hear from you first and then I'll hear from
14   counsel on the other side.
15          MR. RIVERA-SOTO:  Good morning, your Honor.
16          THE COURT:  Good morning.
17          MR. RIVERA-SOTO:  Your Honor, the issue on appeal
18   is really fairly straight forward.  It's what statute of
19   limitations applies?
20          Judge Kaplan was confronted with what he thought
21   was a distasteful, unpleasant task and somehow he went off the
22   rails in doing so.  The fact of the matter is that the statute
23   that is at issue here, which is 2A:50-56.1, is a specific
24   attempt by the New Jersey legislature to codify the statute of
25   limitations that would apply in a foreclosure action.  And it

1      created three separate categories.  In Subsection A, it
2      basically said:  If you're going to do an action on the note,
3      then you must do it within six years of the maturity date
4      that's on the note, not some maturity date that you can figure
5      out from someplace else, by the maturity date that's on the
6      note, or that you can compute from the language on the note.
7      So that if the note said that it was dated January 1, 1970, and
8      it was for thirty years, then can you compute on the face of
9      the note that it's January 1, 2000, thirty years later.

10           The second subcategory says:  We have another
11      grouping of those cases where you have a mortgage, and we're
12      going to presume that mortgages are normally, and these are
13      just residential mortgages, normally for a 30-year period and
14      therefore we're going to give you 30 plus 6, six being the
15      statute of limitations.

16           And then there's the last category, and the last
17      category talks in terms of what you do, not on an action on the
18      note, but on an action in forfeiture under the mortgage.  And
19      it specifically says that you have 20 days -- 20 years, I'm
20      sorry, from the date of default.

21           Now, here, by sort of trying to put a square peg
22      in a round hole, Judge Kaplan decided that really what applied
23      was Subsection A.  And that since more than six years had
24      elapsed from what he viewed to be the accelerated maturity
25      date, which you cannot tell from the face of the documents, but

 1          he decided that maturity date also meant that, that therefore
 2          the claim was time barred.  That is clearly wrong, with all due
 3          respect to Judge Kaplan, it's just wrong.
 4                       And as we've noted to the Court in the submission
 5          that we made yesterday, there have been two cases in the
 6          Superior Court that have addressed it, one from the Morris and
 7          Sussex vicinage, that was issued by Judge Hansbury, who is the
 8          presiding judge in equity out there, and he rejected Judge
 9          Kaplan's analysis completely.  And the second one was from
10          Judge Robert -- I believe it's Roberts, from Hudson County, and
11          she too rejected Judge Kaplan's reasoning completely.  These
12          are both unpublished decisions that clearly are unpublished
13          because, as your Honor knows, trial court decisions in New
14          Jersey are not published until they satisfy the criteria of the
15          Committee on Opinions.  And the Committee on Opinions will not
16          authorize the publication of a trial court decision while a
17          case is still pending.  So those are not published but the
18          restrictions of New Jersey Rule 1:36-3 do not apply to this
19          Court.  This Court can take them into account and can consider
20          them in making a determination.
21                       But more importantly, those two decisions make
22          sense.  If the construct that Judge Kaplan applied were in fact
23          correct, then Subsection C of the statute of limitations that
24          the legislature adopted specifically for mortgage foreclosure
25          actions, would become superfluous.  It would never get there,

Motion

1          because you would also be barred under either A or B, but

2          principally A.  Clearly the legislature adopted Subsection C

3          for a reason.  And they told us why they did so.  They did so

4          because they were reacting to an Appellate Division decision

5          that said:  By the way, guys, there is no statute of

6          limitations in New Jersey for mortgage foreclosure.  So what we

7          are going to borrow is the statute of limitations for adverse

8          possession.  The legislature looked at that opinion and said:

9          The logic seems right, the times seem right, and we do need to

10         deal with this because the purpose of the mortgage -- of the

11         Fair Foreclosure Act is to ensure that we give homeowners every

12         possible chance to try to redeem their debts.  Putting a

13         shorter time period on this will not get there.  And we

14         certainly can't have the note holders being subject to events

15         that are outside of their control.  Let me give you an example

16         of that.

17                  When the mortgage foreclosure process hit in New

18         Jersey and the crisis occurred, the State of New Jersey

19         basically halted all mortgage foreclosure actions.  Stopped

20         them.  And a statewide analysis was done, handled by Judge

21         Jacobson in Mercer County, the now Assignment Judge there, and

22         rules were created in order to -- how they were to be handled.

23         But the delay was several years in duration.

24                  If the analysis that Judge Kaplan adopted were in

25         fact the law, every single mortgage holder would be prejudiced

1    by that delay, yet it had nothing to do with anything that they

2    did.   And that cannot be the law.   It simply cannot.

3                So for all of those reasons, we respectfully

4    request that the Court reverse the determination of Judge

5    Kaplan and find that the claim that is being presented here by

6    SLS and Bank of New York Mellon goes under Subsection C and

7    therefore it is timely.   Thank you, your Honor.

8                THE COURT:   Thank you.

9                Alright, Miss Amica-Terra.

10               MS. AMICA-TERRA:   Good morning, your Honor.

11               THE COURT:   Good morning.

12               MS. AMICA-TERRA:   Judge Kaplan used a holistic

13   approach in interpreting the Fair Foreclosure Statute of

14   Limitations as he's required to do when a Federal Court is

15   interpreting a New Jersey State.   The Court first look at the

16   plain language of the statute, gave the legislatively chosen

17   words their generally accepted meanings.   He looked at the

18   statute has a whole in relation to the statutory scheme.   He

19   found that neither acceleration nor maturity was defined in the

20   Fair Foreclosure Act.   Finding the language to be ambiguous, he

21   then referred to the legislative history, which he also found

22   limited in guidance as to whether the term "maturity date" in

23   the statute of limitations includes an accelerated maturity

24   date.

25               The legislative history refers to matching a

1    six-year statute of limitations on actions based upon contract.
2    However, the history did not specify whether it meant N.J.S.A.
3    2A:14-1, which is applies to contracts which is neutral on
4    acceleration or maturity, or whether the legislator was
5    referring to N.J.S.A. 12A:3-1(18), which applies to negotiable
6    instruments, and states that the statute of limitations does
7    apply to the accelerated due date.  In light of the fact that a
8    mortgage is a negotiable instrument, Judge Kaplan's decision,
9    which applies the statute of limitations to the accelerated
10   maturity date, is not clearly erroneous in his attempt to
11   interpret an ambiguous statute.
12          The statute of limitations provides two distinct
13   dates from which to apply the six-year statute of limitations:
14   The date fixed for making the last payment, or the maturity
15   date.  A date fixed is static, but a maturity date can be
16   advanced if the loan documents permit.  In this case, the loan
17   documents did permit acceleration of the maturity date and the
18   lender opted to exercise that remedy.
19          The Fair Foreclosure Act also permits
20   acceleration.  But similar to the loan documents, does not
21   require acceleration.  It uses the term "may" rather than
22   "shall" and permits a foreclosing lender to only foreclose on
23   unpaid installments of principle and interest and still
24   maintain their in rem mortgage lien on the property.
25          These appellants using the terms contained within

1          the four corners of note and mortgage exercised their remedy of
2          accelerating the debt.  And by doing so, accelerated the
3          maturity date.  It was in their control as to whether to
4          accelerate.
5                    Appellants conceded that the six-year statute of
6          limitations already expired on the note.  Their statutory
7          interpretation would allow a lender to accelerate the debt and
8          then still have 20 years to commence foreclosure proceedings,
9          which we believe is contrary to the principles of judicial
10         economy and would reward the lender for failure to correct
11         deficient pleadings and reward them for sitting on their rights
12         for another 20 years.
13                   The appellants' argument that Judge Kaplan's
14         decision renders Subsection C as superfluous or insignificant
15         is also flawed.  Subsection C would still apply when a borrower
16         defaults and the lender takes no action, in accordance with the
17         concept of adverse possession.  If a lender does not accelerate
18         the debt, it would still be afforded a 20-year statute of
19         limitations from the date of default.  Again, there's no
20         obligation for the lender to accelerate the debt under the loan
21         documents or the Fair Foreclosure Act.  It's a remedy that they
22         may opt.  And although acceleration may be a standard in a
23         lending industry, it's not required.
24                   With respect to the two cases that were submitted to
25         your Honor yesterday.  It was our first opportunity to review

```
1          the cases too.  We believe the case out of Morris County by the
2          decision written by Judge Hansbury, he specifically
3          distinguishes his case from this case.  Also, those cases are
4          still -- they're still within the timeframe to appeal.
5                     And if the Fair Foreclosure Act is meant to give
6          homeowners every opportunity to save their homes, if a lender
7          only foreclosed on outstanding principle or interest payment,
8          it would give the borrower more of an opportunity to foreclose
9          if the debt is not accelerated.
10                    And although the state foreclosures were stayed
11         for a period of time, that stay was lifted and the complaint in
12         this particular case was not dismissed until almost a year
13         after the stay was lifted.  So the lender did have ample
14         opportunity to continue with the original foreclosure filing.
15         In fact, they received more than 30-days notice that the
16         complaint would be dismissed if they did not take action.
17         Action was not taken and thus the complaint was dismissed.
18                    THE COURT:  So, because I notice the Bankruptcy
19         Court had a stay in this case until March 12.  What was that
20         for?
21                    MS. AMICA-TERRA:  No, March 12 was the date of the
22         bankruptcy filing.  So at that point they became stayed.  But
23         the original complaint was dismissed in July of 2013.  The
24         lender's counsel received notice, I believe it was May 25th,
25         that the foreclosure would be dismissed within 30 days if
```

Motion

```
 1    action was not taken.
 2                    THE COURT:  Okay.
 3                    Alright, I also have just received the cases.  I
 4    mean, I only saw them this morning, so I don't know at what
 5    point yesterday they were filed, but I have not had a chance to
 6    read them or digest them, so.
 7                    MR. RIVERA-SOTO:  I understand that, your Honor.
 8    If I can brief rebuttal?
 9                    THE COURT:  Sure.
10                    MR. RIVERA-SOTO:  Let me address the points
11    counsel made, not necessarily in the order in which they were
12    made, but let me start actually with the last one.  As a matter
13    of fact, what counsel was referring to was the dismissal of the
14    original foreclosure complaint in state court.
15                    THE COURT:  I see.
16                    MR. RIVERA-SOTO:  That happens administratively.
17                    THE COURT:  Right.
18                    MR. RIVERA-SOTO:  Okay.  So there's no substantive
19    determination made in respect of that.
20                    Now, counsel talked about the Fair Foreclosure Act's
21    purpose, which is to provide homeowners with every opportunity
22    possible to save their homes.  We don't disagree with that.
23    But every opportunity possible to save their homes does not
24    translate into getting a windfall.  And that's what they're
25    seeking here.  Let's make sure we remember what this case is
```

1      about.  This mortgage was taken out in February of 2007.  The
2      first mortgage payment was due April 1st, 2007.  This mortgage
3      went into default in July of 2007.  It is now eight years later
4      and not one mortgage payment has been made in that period of
5      time.  And this debtor wants this Court to ratify his behavior
6      and give him what should now be about a million dollars'
7      windfall.
8                    THE COURT:  Nine hundred I think at one point.
9                    MR. RIVERA-SOTO:  At one point.  But by this point
10     if they added my fees, it should be better than a million.
11                   THE COURT:  But that's sort of what Judge Kaplan
12     talked about too.  I mean, obviously the default occurs very
13     early once this loan is begun.  I mean, payment is made in
14     April, payment is not made as of July, 2007.  And the issue
15     becomes, nothing gets done.  The mortgage gets accelerated, and
16     then nothing else is done, so.
17                   MR. RIVERA-SOTO:  Well, but the rationale that
18     under Gurds (ch) why -- what was done or was not done still
19     remains, and that is, the full understanding that you had 20
20     years within which to file a foreclosure action.  So there was
21     no rush in doing it.  Secondly, it was just as the mortgage
22     foreclosure crisis was hitting full stride.  So even if you
23     filed a foreclosure, where are you going with it?  Nothing was
24     happening.  People were working with mortgagers.  There were
25     programs that were instituted, like the Homeowner's

1        Modification Program, or HAMP or HARP, whatever those acronyms
2        stand for, that were all being done in order to try to address
3        what was something that was systematic.  Was not unique or
4        idiosyncratic to any given lender or, in fact, any given
5        borrower.  Because the reasons were as multiple as there were
6        people who were involved.  But the fact of the matter is, that
7        everyone in their -- I wanted to say right mind, but that may
8        be a little too harsh, was of the view that you had 20 years
9        within which to file your mortgage foreclosure action.  Because
10       the Appellate Division said it, and then the legislature in New
11       Jersey amended the Fair Foreclosure Act to provide for it.
12                 Now, what's the alternative?  And that's the part
13       that counsel did not talk about.  What's the alternative?  The
14       alternative then is that in July of 2007, when the first
15       default occurred, the bank could have sued for foreclosure and
16       said:  You are in default for the month of July, 2007.  And
17       then when he didn't pay in August, they'd have to amend the
18       complaint to say:  Now you haven't paid in July and August of
19       2007.  And when he didn't pay in September, they now have to
20       amend the complaint again to say:  You haven't paid now in
21       July, August and September.  The notion is ridiculous.  The law
22       cannot provide --
23                 THE COURT:  If you look at it that way.  But the
24       next argument is, why don't you follow it a year later, when
25       you don't have to do it each month, a year later?

```
 1                    MR. RIVERA-SOTO:  Even if you filed it a year
 2         later --
 3                    THE COURT:  Two years later.
 4                    MR. RIVERA-SOTO:  -- according to this theory, I
 5         can only file for the months in which he was in default.
 6         Because if I accelerated the loan, if I accelerated the loan
 7         under debtor's theory, I now could no longer take advantage of
 8         Subsection C, but I was now stuck under Subsection A, which
 9         gives me six years instead of 20.
10                    THE COURT:  So --
11                    MR. RIVER-SOTO:  Because -- I'm sorry to
12         interrupt, your Honor.
13                    THE COURT:  Go ahead.
14                    MR. RIVERA-SOTO:  To close the thought.  Because
15         under their theory, an accelerated maturity date is the same as
16         maturity date as defined in Subsection A of the statute.  That
17         can not be.
18                    Why not?  The statute itself says you get six
19         years "from the date fixed for the making of the last payment
20         or the maturity date set forth in the mortgage, or the note,
21         bond or other obligation secured by the mortgage," which means
22         it's got to be on its cover, "whether the date, itself, is set
23         forth or may be calculated from information contained in the
24         mortgage or note, bond or other obligation."
25                    Well, an accelerated date can never come from the
```

 1        mortgage, note, bond or other obligation.  It will always
 2        come -- excuse me, it will always come from some event
 3        extraneous to the note, bond, mortgage or other obligation.  It
 4        will come because there's been a default.  That will not appear
 5        from the four corners of the document that creates the
 6        obligation.  So we clearly cannot be stuck to that because that
 7        can not be defined.  And it is simply a bit of legal wizardry
 8        to say:  Well, the maturity date was accelerated and therefore
 9        the maturity date is now the new accelerated maturity date.

10                 Well, perhaps you could do that in the abstract.
11        But here you can't do it.  Why?  Because the legislature knew
12        what acceleration meant.  And if your Honor will note in our
13        reply brief, starting at page 5, we give your Honor the
14        examples within the four corners of the Fair Foreclosure Act
15        where the legislature specifically spoke as to accelerated
16        debts.  It knew how to say it.  And it did not say it here.

17                 And the principle, I now start back at where
18        counsel started.  The first thing that counsel told the Court
19        was:  This review has to be holistic because that's what Judge
20        Kaplan did.  I couldn't agree with her more.  I would state the
21        proposition a little bit differently.  I would state that it is
22        the obligation of the Court to read a statute so as to give
23        meaning to all of its sections, not one to the preference of
24        others.  And if the statute is read as Judge Kaplan has
25        proposed, then Subsection C is superfluous and unnecessary

```
 1    because always Subsection A will trump.  There's a reason for
 2    Subsection C.  And it is the Court's obligation to give it its
 3    vibrancy and its relevance.
 4              THE COURT:  But you heard the example cited by
 5    counsel as it relates to a circumstance under which Section C
 6    would be applicable.  What's your thought in that regard?
 7              MR. RIVERA-SOTO:  I don't think their example
 8    makes a whole lot of sense.  Because in my view, Section --
 9    Subsection C applies any time you're talking about foreclosing
10    on the mortgage.  Not an action on the note, but foreclosing on
11    a mortgage.  So that, to a large degree, the note becomes
12    almost irrelevant.  It's the right to secure the collateral
13    that is the issue under C, it's not the underlying obligation.
14              So when I hear counsel's explanation, my thought
15    is:  You're mixing apples and oranges, because they do not
16    belong together.  Subsection C talks about foreclosure on the
17    mortgage.  Because, frankly, if you were to say:  Well, what do
18    you do in respect to the note?  In my view, Subsection A is
19    interesting, but in some degree unnecessary, because the UCC
20    provides for the statute of limitations on a negotiable
21    instrument, which is what a note is.  And it says it's six
22    years.
23              All Subsection A does is import the UCC's statute
24    of limitations to this context.  Which, by the way, is the New
25    Jersey general statute of limitations for breaches of contract,
```

1    which is, again, all a note is.  It's a contract.  But we view

2    mortgage foreclosure differently.  We do not view mortgage

3    foreclosure as a breach of contract.  We do not view mortgage

4    foreclosure as an obligation under a note.  We view mortgage

5    foreclosure as collection on security for a debt, which is

6    different from the debt, itself.  That's why we have two

7    instruments, a note and a mortgage.  That's why the note is not

8    recorded but the mortgage is.  And the reason for that is to

9    provide fair notice to anybody else of the underlying

10   obligation here.  And that someone may stand in your title

11   chain.  That's why.  So to a large degree, it's an interesting

12   analogy, but it's irrelevant.  Because what matters here is

13   that we're talking about a mortgage foreclosure, not an action

14   on the debt.

15                THE COURT:  Alright, very well.

16                MR. RIVERA-SOTO:  Thank you, your Honor.

17                THE COURT:  Thank you.

18                Alright.  And, Miss Amica-Terra, anything else you

19   want to add?  You don't have to.  I know lawyers are always

20   scared not to if they're asked.

21                MS. AMICA-TERRA:  Just the last.

22                THE COURT:  Because I did ask some questions, so I

23   want to make sure that there's nothing you wanted to add.

24                MS. AMICA-TERRA:  Appellants argue that Subsection

25   A only apply to notes.  There's already a statute that applies

1          to notes.  And it wouldn't make sense if that statute only

2          applies to notes when it is part of the Fair Foreclosure Act.

3                    And the legislative purpose of this statute of

4          limitations is to clear title on actions that can not be -- on

5          loans that can no longer be ensure forced.

6                    This action was commenced in 2007.  They

7          weren't -- these foreclosure matters were not stayed until, I

8          believe it was late 2010 or sometime in 2011.  They were

9          notified of deficiencies in their final judgment -- motion for

10         final judgment of foreclosure as early as 2010, and never took

11         action to remediate.

12                   Finally, a lender would always know when the

13         accelerated date is because the acceleration is in the control

14         of the lender and not of the debtor.  So they would have the

15         information necessary to know that an action must be commenced

16         within six years from the date that they chose to accelerate

17         the debt.

18                   Thank you, your Honor.

19                   THE COURT:  Alright, very well.

20                   Alright.  With that being said, counsel, thank

21         you.  I will take it under advisement.  I will issue an

22         opinion.  It will give me an opportunity as well to read and

23         digest the persuasive authority that has been submitted as of

24         yesterday.

25                   So, thank you, and you will hear from the Court.

1                    MS. AMICA-TERRA:   Thank you, your Honor.

2                    MR. RIVERA-SOTO:   Thank you, your Honor.

3                    (Matter concluded)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25